

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100065 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 10SL-CR08418-01 |
| | ) | |
| DERRICK WILSON, | ) | Honorable Michael D. Burton |
| | ) | |
| Appellant. | ) | Filed:  November 25, 2014 |

Derrick Wilson appeals the judgment entered upon a jury verdict convicting him of two counts of first-degree statutory sodomy and one count of first-degree child molestation.  We affirm.

## I.      BACKGROUND

### A.      Evidence Adduced at Trial

Wilson was charged with two counts of first-degree statutory sodomy and one count of first-degree child molestation.  The following evidence was adduced at Wilson's jury trial.

In September 2010, Wilson was living in an apartment with his girlfriend and two of her children, eleven-year-old B.S. and her nine-year-old brother.  The children's older sister, seventeen-year-old A.S., would also sometimes stay the night in the apartment.

On the evening of September 19, 2010, all three children were sleeping in the same bedroom.  A.S. and her brother were in the bed, and B.S. was on the floor.  At one point, A.S.

woke up and saw Wilson's head in between B.S.'s legs and heard Wilson licking and moaning. One of B.S.'s legs was up in the air and the other leg was down, and Wilson's hands were "underneath [B.S.'s] back, butt area."

A.S. did not immediately know what to do, and she stayed in bed for about five minutes. When A.S. got out of bed, Wilson jumped up and said "good morning." Later that night, A.S. went to her grandmother's house, A.S. told her grandmother what she had seen, and the police were contacted.

Wilson was arrested at about 11:00 p.m. on the night of the incident and was subsequently interviewed by police. During the interview, Wilson admitted he touched B.S.'s breasts. Wilson also admitted he placed his finger inside B.S.'s vagina and placed his tongue on B.S.'s vagina on two separate occasions, including once when B.S. returned from a trip to Florida.

On the day following the incident, B.S. was examined at the hospital and a sexual assault kit was collected. The exam revealed that B.S. had a sexually transmitted disease that could be transferred by oral sex. Additionally, a DNA analysis showed that male DNA consistent with Wilson's DNA was on B.S.'s underwear.

B.S. was interviewed at the Children's Advocacy Center. During the interview, B.S. stated that Wilson touched her on her "private" between her legs and on her chest on two occasions, and that he placed his finger inside her. B.S. also stated that she felt Wilson's head moving between her legs when she was asleep.

B.S. testified at trial that Wilson touched her chest. She also testified that Wilson put his fingers inside her vagina and put his mouth on her vagina on two separate occasions, once when she came back from a trip to Florida and again in September 2010.

2

**B.    Relevant Procedural Posture Including Wilson's Motion to Suppress**

Prior to Wilson's jury trial, he filed a motion to suppress his statements to the police. The following evidence regarding Wilson's interview with police was adduced at the hearing on his motion to suppress and at trial.

Detective David Rohlfing testified that at approximately 4:00 a.m. on September 20, 2014, he began his interview of Wilson by asking him general background questions designed to "build a rapport." Specifically, Detective Rohlfing asked Wilson his date of birth, the spelling of his name, his Social Security number, where he worked, where he lived, and what kind of car he drove. The questions did not elicit any incriminating information from Wilson.

Three minutes after asking Wilson general background questions, at 4:03 a.m., Detective Rohlfing read Wilson his *Miranda* rights. Wilson verbally indicated that he understood his *Miranda* rights and also signed a form at 4:04 a.m. acknowledging that he understood his rights. Detective Rohlfing testified that Wilson's *Miranda* rights were given before he asked Wilson any incriminating or "guilt-seeking questions" or "any questions about the crime[s]."

After Wilson indicated he understood his *Miranda* rights, Detective Rohlfing questioned Wilson about whether he had any sexual contact with B.S., but Wilson denied that any improper contact had occurred. Detective Rohlfing exited the interview room, and Captain Timothy Fagan went into the interview room and began questioning Wilson. Wilson eventually admitted to Captain Fagan that he touched B.S.'s breasts, and Wilson admitted he placed his finger inside B.S.'s vagina and placed his tongue on B.S.'s vagina on two separate occasions.

After the hearing on Wilson's motion to suppress, the trial court entered an order denying the motion. In its order, the trial court found that "[w]ithin three minutes of the interview (essentially after making introductions), Rohlfing read [Wilson] his *Miranda* rights. Without

3

hesitation, [Wilson] agreed to waive his rights, signing the standard *Miranda* waiver form that Rohlfing provided to him." The trial court also found that "[t]here was nothing done that was coercive" and that Wilson's statements to the police were "given voluntarily," after Wilson understood and waived his *Miranda* rights.

Defense counsel objected when Wilson's statements to police were introduced at trial, and the trial court overruled the objections. After the close of all the evidence, the jury found Wilson guilty of two counts of first-degree statutory sodomy and one count of first-degree child molestation. Wilson filed a motion for new trial which asserted the trial court erred in denying his motion to suppress. The trial court denied Wilson's motion for new trial and sentenced Wilson to a total of seventeen years' imprisonment. This appeal followed.

## II.     DISCUSSION

In Wilson's sole point on appeal, he asserts the trial court erred in denying his motion to suppress and admitting his statements to the police wherein he confessed to the charged criminal conduct. We disagree.

Our review of a trial court's denial of a motion to suppress is limited to a determination of whether the decision is supported by substantial evidence. *State v. Byrd*, 389 S.W.3d 702, 707 (Mo. App. E.D. 2012). In making this determination, we consider the evidence presented at both the suppression hearing and at trial, and we view the facts and reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Id*. This Court will reverse the trial court's ruling only if it is clearly erroneous. *Id*. Additionally, while we defer to the trial court's determinations of witness credibility and the trial court's findings of fact, we review questions of law *de novo*. *State v. Nylon*, 311 S.W.3d 869, 884 (Mo. App. E.D. 2010).

Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), a person in police custody must be warned prior to an interrogation that he has the right to remain silent, that anything he says could be used against him in a court of law, that he has the right to an attorney, and that if he cannot afford an attorney one will be appointed for him ("*Miranda* warnings"). In Missouri, "custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody." *State v. Collings*, 2014 WL 4086313 at *8 (Mo. banc 2014) (quotation omitted). "Statements obtained during a custodial interrogation not preceded by *Miranda* warnings are subject to suppression at trial." *Id.* When *Miranda* warnings are given, an accused may knowingly and intelligently waive his rights and agree to answer questions or make a statement. *Miranda*, 384 U.S. at 479. To prove that a defendant's statements to the police are admissible at trial, the State must show, (1) the challenged statements complied with *Miranda*'s guidelines; and (2) the statements were voluntarily made. *Collings*, 2014 WL 4086313 at *8.

In this case, Wilson argues the trial court erred in admitting his post-*Miranda* statements to the police because Detective Rohlfing did not give Wilson *Miranda* warnings at the beginning of the interview, before the detective asked Wilson general background questions in an effort to build a rapport. To support his argument, Wilson relies on *Missouri v. Seibert*, 542 U.S. 600 (2004). For the reasons set forth below, we find that *Seibert* is inapplicable to the facts of this case.

In *Seibert*, the defendant was arrested for murder and taken to the police station where she was questioned about the crime for thirty to forty minutes. *Id.* at 604-05. The officer deliberately withheld the *Miranda* warnings during this initial stage of questioning, and the defendant made incriminating statements regarding her involvement in the murder. *Id.* at 605-

5

06. The officer gave the defendant a twenty-minute break, and when he returned to the interview room, he turned on a tape recorder, advised the defendant of the *Miranda* warnings, obtained a waiver, and resumed questioning. *Id*. at 605. The officer confronted the defendant with her pre-warning incriminating statements, and the defendant repeated the incriminating information during the second half of the interrogation. *Id*. at 605-06. The defendant was charged with first-degree murder and filed a motion to suppress her pre-*Miranda* warning and post-*Miranda* warning statements. *Id*. at 605. At the suppression hearing, the officer testified he made a "conscious decision" to withhold the *Miranda* warnings and that he used an interrogation technique of "question first, then give the warnings, and then repeat the question 'until I get the answer that she's already provided once.'" *Id*. at 605-06.

At issue on appeal was the admissibility of defendant's post-*Miranda* warning statements, and a majority of the U.S. Supreme Court held that the statements were inadmissible. *Id*. at 603, 617, 618, 622. Relevant portions of the Supreme Court's *Seibert* decision consisted of, (1) a plurality opinion authored by Justice Souter and joined by Justice Stevens, Justice Ginsburg, and Justice Breyer; and (2) an opinion concurring in the result authored by Justice Kennedy. *Id*. at 603-17, 618-22. Both the plurality and Justice Kennedy's concurrence focused on the fact that, in *Seibert*, a "two-step interrogation" took place, i.e., "a police protocol for custodial interrogation that calls for giving no warnings of the right to remain silent and counsel until interrogation has produced a confession . . . then issuing *Miranda* warnings . . . then leading the suspect to cover the same ground a second time." *See id*.; *Collings*, 2014 WL 4086313 at \*9 (quoting *Seibert*, 542 U.S. at 604).

6

Because Justice Kennedy's concurrence in *Seibert* provided the narrowest rationale[1] for finding the defendant's post-*Miranda* warning statements were inadmissible, the Missouri Supreme Court adopted Justice Kennedy's concurrence as the test Missouri Courts use to determine "whether a 'two-step interrogation' has occurred, rendering repeated statements made to police admissible." *Collings*, 2014 WL 4086313 at *9; *State v. Gaw*, 285 S.W.3d 318, 323 (Mo. banc 2009). Pursuant to Justice Kennedy's concurrence, "a confession is inadmissible despite a belated *Miranda* warning where a 'two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning[s].'" *Gaw*, 285 S.W.3d at 323 (quoting *Seibert*, 542 U.S. at 622).

In this case, a "two step interrogation," as that term is defined by the U.S. and Missouri Supreme Courts, was not used. Detective Rohlfing did not withhold the *Miranda* warnings until Wilson confessed, then issue warnings, then lead Wilson to cover the same ground a second time and have him repeat his incriminating statements. Instead, Detective Rohlfing began his interview of Wilson by asking him general background questions (his date of birth, the spelling of his name, his Social Security number, where he worked, where he lived, and what kind of car he drove). These questions were designed to "build a rapport" and did not elicit any incriminating information from Wilson. Three minutes after asking Wilson general background questions, at 4:03 a.m., Detective Rohlfing read Wilson his *Miranda* rights. Wilson then waived his rights, and subsequently confessed to involvement in the crimes. Because a two-step interrogation process was not used, *Seibert* is inapplicable to the facts of this case. *See State v. Hughes*, 272 S.W.3d 246, 255 (Mo. App. W.D. 2008) (similarly distinguishing *Seibert*, finding

---

[1] "[W]here a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *State v. Gaw*, 285 S.W.3d 318, 322-23 (Mo. banc 2009) (quoting *Marks v. U.S.*, 430 U.S. 188, 193 (1977) (internal quotations omitted)).

7

that "[u]nlike *Seibert* . . . this is not a case where [the defendant] was questioned concerning the circumstances of the offense, then advised of his rights and simply urged to repeat incriminating statements he had previously made").

Because *Seibert* is inapplicable, we must determine the admissibility of Wilson's post-*Miranda* warning statements pursuant to the standard set forth in *Oregon v. Elstad*, 470 U.S. 298 (1985). *Hughes*, 272 S.W.3d at 256, 256 n. 7 (quoting *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring) ("[t]he admissibility of postwarning statements should continue to be governed by the principles of *Elstad* unless the deliberate two-step strategy was employed")). *Elstad* examined the issue of "whether an initial failure of law enforcement officers to administer the [*Miranda* warnings], without more, 'taints' subsequent admissions made after a suspect has been fully advised of and has waived his *Miranda* rights." 470 U.S. at 300. The U.S. Supreme Court held that a suspect who has responded to unwarned yet uncoercive police questioning is not thereby disabled from waiving his rights and confessing after he has been given the *Miranda* warnings. *Id*. at 318. The Supreme Court reasoned:

> It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.
>
> . . .
>
> The relevant inquiry is whether, in fact, the second statement was [] voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative.

*Id*. at 309, 318.

In this case, Wilson only argues that the allegedly belated administration of the *Miranda* warnings renders his subsequent statements inadmissible; Wilson makes no claim that he was coerced into giving his post-*Miranda* warning statements or that his waiver of his *Miranda* rights was anything other than knowing and voluntary. Moreover, in finding that Wilson's post-*Miranda* statements were admissible, the trial court found, "[t]here was nothing done that was coercive" and that Wilson's statements to the police were "given voluntarily," after Wilson understood and waived his *Miranda* rights. In the absence of any contrary argument by Wilson, we find the trial court could properly conclude that Wilson's post-*Miranda* warning statements were knowingly and voluntarily made and therefore admissible under the *Elstad* analysis. *See Hughes*, 272 S.W.3d at 255, 257 (finding no error under similar circumstances, including where the officer failed to give the defendant the *Miranda* warnings at the outset of the interview in order to build a rapport). Therefore, the trial court did not clearly err in denying Wilson's motion to suppress his statements to the police wherein he confessed to the charged criminal conduct. Point denied.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROBERT M. CLAYTON III, JUDGE

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.