Colorado Court of Appeals Opinions || September 24, 2015


Colorado Court of Appeals -- September 24, 2015
2015 COA 132. No. 12CA2069. People v. Verigan.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 132

 
 



 Court of Appeals No. 12CA2069
 El Paso County District Court No. 11CR3701
 Honorable Thomas L. Kennedy, Judge


 The People of the State of Colorado,

 Plaintiff-Appellee,

 v.

 Kimberlie Deann Verigan,

 Defendant-Appellant.


 JUDGMENT AFFIRMED

 Division VI
 Opinion by JUDGE ASHBY
 Furman and Booras, JJ., concur

 Announced September 24, 2015


 Cynthia H. Coffman, Attorney General, Jillian J. Price, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Douglas K. Wilson, Colorado State Public Defender, Nathaniel E. Deakins, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  Defendant, Kimberlie Deann Verigan, appeals from the trial courtâs judgment entered on jury verdicts finding her guilty of possession of two grams or less of a controlled substance (methamphetamine) and possession of drug paraphernalia. Her appeal requires us to decide whether the Supreme Courtâs various opinions in Missouri v. Seibert, 542 U.S. 600 (2004), produced a precedential rule that binds lower courts. Because we conclude that it does not, we apply the Supreme Courtâs pre-Seibert cases to the facts of this case and affirm Veriganâs convictions.

 I. Background

 Â¶2Â Â Â Â Â Â Â Â  Early one morning, Officers Brewer and Mitchell saw a car roll through a stop sign and pulled it over. Almost immediately upon stopping, the driver got out of the car and approached the officers. Because he approached in a âsemi-aggressiveâ manner, the officers placed him in the backseat of the police cruiser. Officer Mitchell then approached the car and contacted Verigan, who had been seated in the passenger side of the car. Another passenger who was in the backseat was allowed to leave.

 Â¶3Â Â Â Â Â Â Â Â  Officer Mitchell determined that Verigan owned the car, and asked her to provide her registration and proof of insurance. WhileÂ Verigan was getting those items, Officer Mitchell saw a used marijuana pipe containing a âblack, burned substanceâ in the driverâs side door and an unlabeled pill bottle containing white pills on the driverâs side floorboard. He then asked Officer Brewer to search Veriganâs car while he led Verigan a short distance away.

 Â¶4Â Â Â Â Â Â Â Â  Officer Brewer searched the passenger compartment of the car. In the front passenger seat, he found a backpack containing a camera case. Inside the camera case was a lighter, cut straws, two methamphetamine pipes, and two small baggies of what was later identified as methamphetamine. Officer Brewer told Officer Mitchell what he had found. Officer Mitchell then brought Verigan over to the car where the officers asked her about the backpack, the drugs, and the drug paraphernalia they had found in the car.

 Â¶5Â Â Â Â Â Â Â Â  Officer Mitchell asked Verigan who owned the backpack. Verigan replied that the backpack belonged to basically everybody who had been in the car, but it was mainly used by her. He also asked her if she possessed any illegal items, and she said she had a box cutter. Officer Mitchell then lead Verigan to the back of her vehicle, asked her to turn around and face the car, and instructedÂ her to put her hands behind her back while he conducted a pat-down search.

 Â¶6Â Â Â Â Â Â Â Â  During the pat-down, Officer Mitchell felt other objects in Veriganâs pocket. Verigan told Officer Mitchell that, due to a recent injury, it would cause her physical pain to be searched more thoroughly. Officer Mitchell told Verigan that a female officer would come to conduct a thorough search, but that it would be in her best interest to hand over anything illegal she might have. Verigan produced a small baggy of methamphetamine from her pocket and was then arrested. At no point before her arrest did the officers place Verigan in handcuffs or give her a Miranda advisement pursuant to Miranda v. Arizona, 384 U.S. 436 (1966).

 Â¶7Â Â Â Â Â Â Â Â  Once at the police station, Officer Brewer gave Verigan a Miranda advisement, and after she waived her Miranda rights, interrogated her. He asked about the methamphetamine in the backpack, the duration of Veriganâs methamphetamine use, whether the methamphetamine from her pocket belonged to her, and what the brown substance found in the camera case was. Veriganâs answers were consistent with those she had given at the scene of the traffic stop: the backpack belonged to everybody whoÂ had been in the car, the baggy from her pocket was hers, and the brown substance from inside the camera case was methamphetamine residue from previous use.

 Â¶8Â Â Â Â Â Â Â Â  Before trial, Verigan moved to suppress the evidence found during the search of her vehicle, the statements she made at the scene of the traffic stop before receiving a Miranda advisement, and the statements she made at the police station after receiving a Miranda advisement and waiving her Miranda rights. After a hearing, the trial court denied Veriganâs motions. It found that the search was supported by probable cause and that, because Verigan was not âunder arrestâ during the interrogation by Officer Mitchell, no Miranda advisement was required.

 Â¶9Â Â Â Â Â Â Â Â  At trial, the court admitted the physical evidence found during the search of the car as well as the baggy of methamphetamine from Veriganâs pocket. It also admitted Veriganâs statements to Officer Mitchell, including that the backpack in the car mostly belonged to her; that the methamphetamine in the backpack did not belong to the driver; her conflicting statements that someone else either gave her the methamphetamine in her pocket, that sheÂ picked it up somewhere, or that it was hers; and statements to Officer Brewer that she was a methamphetamine user.

 Â¶10Â Â Â Â Â Â Â Â  Verigan was convicted of one count of possession of methamphetamine and one count of possession of drug paraphernalia. She appeals.

 II. Probable Cause for Search of the Car

 Â¶11Â Â Â Â Â Â Â Â  Verigan argues that the evidence obtained from the search of her vehicle should have been suppressed because Officer Mitchellâs observation of a used marijuana pipe and an unlabeled pill bottle, without more, did not give the officers probable cause to search the vehicle. We disagree.

 Â¶12Â Â Â Â Â Â Â Â  Whether the trial court erred by admitting the evidence obtained from the search presents a mixed question of fact and law. See People v. Bonilla-Barraza, 209 P.3d 1090, 1094 (Colo. 2009). We defer to the trial courtâs factual findings if there is competent evidence in the record to support them, but we review the courtâs legal conclusions de novo. Id.

 Â¶13Â Â Â Â Â Â Â Â  The United States and Colorado Constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, Â§ 7. Unless a specific exception applies,Â warrantless searches are presumptively unreasonable. See People v. Moore, 900 P.2d 66, 70 (Colo. 1995). One recognized exception is the automobile exception, which permits the âwarrantless search of an automobile if [the police] have probable cause to believe that the automobile contains evidence of a crime.â Id. Probable cause in this situation means a reasonable belief. Id. This standard, as relevant here, requires only that an observed object would cause a reasonable person to believe âthat certain items may be contraband . . . or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.â Texas v. Brown, 460 U.S. 730, 742 (1983). Whether probable cause exists depends on the totality of the circumstances. See People v. Miller, 75 P.3d 1108, 1113 (Colo. 2003).

 Â¶14Â Â Â Â Â Â Â Â  If there is a reasonable belief that a car contains evidence of a crime, and therefore probable cause, police may search âevery part of the vehicle and its contents that may conceal the object of the search.â United States v. Ross, 456 U.S. 798, 825 (1982).

 Â¶15Â Â Â Â Â Â Â Â  Here, prior to the search, the officers lawfully observed a marijuana pipe filled with âa black, burned substance.â We agree with Verigan that an officerâs observation of an unused marijuanaÂ pipe, still in its original packaging, in a car, cannot alone lead to a reasonable belief that the car contains illegal drugs. See People v. McCarty, 229 P.3d 1041, 1046 (Colo. 2010). However, an officerâs observation of a used marijuana pipe containing a burned substance that the officer could reasonably infer to be marijuana does support a reasonable belief that the vehicle may contain additional illegal drugs or contraband. See People v. Daverin, 967 P.2d 629, 633 (Colo. 1998) (officersâ discovery of a marijuana pipe loaded with a small amount of what appeared to be marijuana during lawful search of pickup truckâs passenger compartment provided officers with probable cause to expand that search for additional marijuana to the bed of the truck). Accordingly, the officersâ observation of a pipe that they recognized as the type commonly used to smoke marijuana, filled with a âblack, burned substance,â provided them with a reasonable belief that the car may have contained marijuana, an illegal drug at the time of the search in 2011.[1]

 Â¶16Â Â Â Â Â Â Â Â  Therefore, we conclude that there was probable cause for the search of Veriganâs car, and that the trial court properly denied Veriganâs motion to suppress the evidence discovered during that search.

 III. Suppression of Statements

 Â¶17Â Â Â Â Â Â Â Â  Verigan next argues that the trial court erred by denying her motion to suppress the statements she made to police at the scene and later at the station. She contends that her statements at the scene were inadmissible under Miranda because the officers subjected her to custodial interrogation without advising her of her rights. She also argues that the statements she made at the station after a Miranda advisement and waiver were inadmissible because they were âtaintedâ by her pre-advisement statements at the scene. We conclude that the court erred by failing to suppress the pre-advisement statements, but properly admitted the post-advisement statements. We further conclude that the error of admitting the pre-advisement statements was harmless beyond a reasonable doubt.

 A. Fifth Amendment Principles and Application to Veriganâs Statements

 Â¶18Â Â Â Â Â Â Â Â  The Fifth Amendment to the United States Constitution provides that â[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . .â U.S. Const. amend. V. Accordingly,

 a police officer is obliged to inform the person of the following rights: that the person has a right not to say anything; that anything he says can be used against him in court; that he has a right to the presence of an attorney; and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires.

 People v. Hamilton, 831 P.2d 1326, 1330 (Colo. 1992); see Miranda, 384 U.S. at 444-45. This advisement must be given prior to custodial interrogation. People v. Begay, 2014 CO 41, Â¶12. If a suspect is subjected to custodial interrogation without receiving this advisement, and the suspect has not waived these rights, statements from the interrogation are presumptively inadmissible during the prosecutionâs case-in-chief, subject to certain exceptions. See Oregon v. Elstad, 470 U.S. 298, 305 (1985); New York v. Quarles, 467 U.S. 649, 654 (1984).Â 

 Â¶19Â Â Â Â Â Â Â Â  From our review of the record, Veriganâs relevant pre-advisement statements at the scene were that

 
 she mostly owned the backpack;

 
 the camera case containing the drugs and paraphernalia belonged to the other passenger;

 
 the driver was not the owner of the drugs in the backpack;

 
 she had a bag of methamphetamine in her pocket.



 Â¶20Â Â Â Â Â Â Â Â  In her post-advisement statements, Verigan repeated the statements listed above and also said that

 
 the bag of methamphetamine was given to her by another person; and

 
 the bag of methamphetamine was hers. B. Suppression of Pre-Advisement Statements



 Â¶21Â Â Â Â Â Â Â Â  Whether Veriganâs questioning at the scene was interrogation is not at issue, so the remaining question is whether she was in custody for purposes of Miranda when she made the pre-advisement statements.

 Â¶22Â Â Â Â Â Â Â Â  Whether a person was in Miranda custody is a mixed question of fact and law. Begay, Â¶9. We defer to findings of fact made byÂ the trial court, but we review the custody determination de novo. Id. âOur analysis is not limited to the factual findings which form the basis of the trial courtâs order; we may also consider undisputed facts evident in the record.â Id.

 Â¶23Â Â Â Â Â Â Â Â  A suspect is in Miranda custody not only if the suspect has been formally arrested, but also when, âunder the totality of the circumstances, a reasonable person in the [suspectâs] position would consider himself to be deprived of his freedom of action to the degree associated with a formal arrest.â People v. Matheny, 46 P.3d 453, 468 (Colo. 2002); accord Hamilton, 831 P.2d at 1330. Since this is an objective standard, âneither the interrogating officerâs subjective state of mind nor the suspectâs mental state is conclusive on the issue of whether a reasonable person in that situation would have considered the interrogation to be custodial.â Hamilton, 831 P.2d at 1330.

 Â¶24Â Â Â Â Â Â Â Â  In Matheny, the Colorado Supreme Court listed factors to consider in analyzing whether a defendant was in custody at the time of questioning:

 (1) the time, place, and purpose of the encounter; (2) the persons present during the interrogation; (3) the words spoken by theÂ officer to the defendant; (4) the officerâs tone of voice and general demeanor; (5) the length and mood of the interrogation; (6) whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; (7) the officerâs response to any questions asked by the defendant; (8) whether directions were given to the defendant during the interrogation; and (9) the defendantâs verbal or nonverbal response to such directions.

 46 P.3d at 465-66. None of these factors is dispositive, and the list is not exhaustive. Id.

 Â¶25Â Â Â Â Â Â Â Â  The trial court found that Verigan was not handcuffed, that she was not being held at gunpoint, and that she was not told she was under arrest. On those facts, the trial court concluded that, based on the totality of circumstances, âalthough Ms. Verigan was not free to leave there were none of the traditional indicia of formal arrest,â and therefore Verigan âwas not under arrest during her conversation with Officer Mitchell, and Miranda warnings were not required.â

 Â¶26Â Â Â Â Â Â Â Â  Although Verigan was not handcuffed and was not being held at gunpoint, a suspect can be in custody for Miranda purposes without being physically restrained. See People v. Taylor, 41 P.3d 681, 692-93 (Colo. 2002); People v. Polander, 41 P.3d 698, 705Â (Colo. 2001). We conclude, based on the totality of the circumstances, that a reasonable person in Veriganâs situation would have had âreason to believe she would not be briefly detained and then released . . . .â Polander, 41 P.3d at 705. These circumstances include that

 
 she owned the car but was unable to leave in the car because it was being searched and the police cruiser had blocked it in the driveway;

 
 she knew the officers were searching her car for drugs and drug paraphernalia after having already observed drug paraphernalia therein, see id.;

 
 she heard Officer Brewer tell Officer Mitchell that he believed the backpack to be Veriganâs and not to let her leave while he continued searching her car;

 
 although she was not handcuffed, she was escorted to her car by Officer Mitchell and asked if the items that had been found by Officer Brewer were hers;

 
 Officer Mitchell explained to her that they had called a female officer to the scene to conduct a more thoroughÂ search of Veriganâs person, implying that she would not be free to leave until that happened.



 Â¶27Â Â Â Â Â Â Â Â  Considering the totality of these circumstances, we conclude that, by the time the officers began questioning Verigan about the backpack and the illegal items found in the car, her freedom of action had been curtailed to the degree associated with a formal arrest and she was in custody for Miranda purposes. Accordingly, the trial court erred by failing to suppress the statements she made to the officers before the Miranda advisement was given.

 C. Suppression of Post-Advisement Statements

 Â¶28Â Â Â Â Â Â Â Â  Verigan also argues that the court erred by failing to suppress her post-advisement statements she made at the station because her pre-advisement statements at the scene rendered the later statements inadmissible. We disagree.

 1. Seibert and Elstad

 Â¶29Â Â Â Â Â Â Â Â  The Supreme Court has held that a pre-advisement confession, itself inadmissible, may also render a later post-advisement confession involuntary and therefore inadmissible. See Seibert, 542 U.S. at 616, 622 (five justices agree that pre-advisement statement rendered post-advisement statementÂ inadmissible). In these two-stage interrogations, the fact that a suspect has confessed in the first interrogation may cause the suspect to believe, even after receiving a Miranda advisement and waiving those rights, that he or she is not truly free to remain silent because the police already have the suspectâs initial confession.

 Â¶30Â Â Â Â Â Â Â Â  Although the Supreme Court addressed this issue in Seibert, the concurring justices in that case did not produce a majority opinion explaining how courts should determine when a pre-advisement confession renders a post-advisement confession inadmissible. Instead, the Court issued a four-justice plurality opinion and Justice Kennedy concurred in the judgment but not the pluralityâs analysis. Verigan urges us to apply the Seibert pluralityâs rule while the People urge us to apply the rule from Justice Kennedyâs concurrence. We conclude that no rule or partial rule from Seibert has precedential force and therefore, in the absence of any guidance from our supreme court on what rule to apply in this situation, we apply the rule from the Supreme Courtâs majority opinion in Elstad, 470 U.S. 298.

 Â¶31Â Â Â Â Â Â Â Â  In Elstad, the burglary suspect made a pre-advisement confession to police in his home. Id. at 301. After this confession,Â police took the suspect to the station, gave him a Miranda advisement, obtained a waiver, and obtained a much more detailed confession and account of the burglary. Id. at 301-02. Even though the officers did not advise the suspect of his Miranda rights before the confession in his home and the Court assumed that he was in custody for purposes of Miranda at that time, the Court noted that the first confession âhad none of the earmarks of coercion.â Id. at 316. The Court then held that because the pre-advisement confession was voluntary and âthere is no warrant for presuming coercive effect where the suspectâs initial inculpatory statement, though technically in violation of Miranda, was voluntary,â the post-advisement confession was admissible. Id. at 318.

 Â¶32Â Â Â Â Â Â Â Â  The Court revisited this issue in Seibert. In that case, police purposefully did not advise a suspect of her Miranda rights and interrogated her until she confessed. Seibert, 542 U.S. at 609. Police then took a twenty-minute break, advised the suspect of her rights, obtained a waiver of those rights, and then elicited a post-advisement confession by confronting her with her pre-advisement one. Id. at 605. A four-justice plurality declined to apply the ElstadÂ analysis and instead focused its inquiry on whether, given the circumstances of the two interrogations, âit would be reasonable to find that . . . the [advisement] could function âeffectivelyâ as Miranda requires.â Seibert, 542 U.S. at 611-12. To resolve this inquiry, the plurality identified five factors that courts should consider:

 [(1)]the completeness and detail of the questions and answers in the first round of interrogation,

 [(2)]the overlapping content of the two statements,

 [(3)]the timing and setting of the first and the second,

 [(4)]the continuity of police personnel, and

 [(5)]the degree to which the interrogatorâs questions treated the second round as continuous with the first.

 Id. at 615. Based on its analysis of these five factors, the plurality concluded that the post-advisement confession was inadmissible. Id. at 617.

 Â¶33Â Â Â Â Â Â Â Â  Although Justice Kennedy agreed that the deliberate two-stage interrogation used against the suspect in Seibert rendered the post-advisement confession inadmissible, he disagreed with the pluralityâs rationale and its five-factor test. Id. at 620 (Kennedy, J., concurring in the judgment). Instead, he wrote that Elstad should continue to govern the admissibility of post-advisement statementsÂ unless the police deliberately use a two-step interrogation. Id. According to Justice Kennedy, when police deliberately use a two-step interrogation to skirt Miranda, the post-advisement confession should be inadmissible unless âcurative measuresâ are taken. Id. at 622 (Kennedy, J., concurring in the judgment). The four dissenting justices believed that Elstad should govern the analysis in all cases and rejected both the pluralityâs five-factor test and Justice Kennedyâs subjective intent-based analysis. Id. at 624, 628 (OâConnor, J., dissenting).

 Â¶34Â Â Â Â Â Â Â Â  Attempting to distill a precedential rule from Seibert, courts have applied either the plurality, United States v. Pacheco-Lopez, 531 F.3d 420, 427-28 (6th Cir. 2008), Justice Kennedyâs concurrence, People v. Camino, 116 Cal. Rptr. 3d 173, 182 (Cal. Ct. App. 2010); State v. Wilson, 449 S.W.3d 803, 808 (Mo. Ct. App. 2014), or both, see United States v. Carrizales-Toledo, 454 F.3d 1142, 1151 (10th Cir. 2006); People v. Lucas, 232 P.3d 155, 161-62 (Colo. App. 2009). However, we are not persuaded that any of these approaches is proper.

 Â¶35Â Â Â Â Â Â Â Â  âWhen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, theÂ holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.â Marks v. United States, 430 U.S. 188, 193 (1977) (internal quotation marks omitted). But this principle is inapplicable when the rationale of a plurality and concurring opinion are mutually exclusive. See Carrizales-Toledo, 454 F.3d at 1151. Such is the situation here.

 Â¶36Â Â Â Â Â Â Â Â  The Seibert pluralityâs rule always requires application of the five factors to determine whether a pre-advisement statement renders a subsequent post-advisement statement inadmissible. In contrast, Justice Kennedyâs concurrence would never apply the five factors and would apply Elstad in all cases except where the police deliberately withheld a Miranda advisement until after a suspect confessed. Because, no matter the facts of a given case, the four-justice plurality and Justice Kennedy would apply wholly different rules, neither the pluralityâs five-factor test, nor Justice Kennedyâs rule, nor any part of either, enjoyed the assent of five justices. And because âthe lack of an agreement by a majority of the Court on the principles of law involved prevents [a decision] from being an authoritative determination for other cases,â United States v. Pink,Â 315 U.S. 203, 216 (1942), there is no precedential rule that we can apply from Seibert. Because Seibert did not announce a precedential rule that binds lower courts, we apply the Courtâs pre-Seibert precedent on this issue, which we find in Elstad.

 2. Post-Advisement Statements Admissible Under Elstad

 Â¶37Â Â Â Â Â Â Â Â  Applying Elstad to the facts of this case is straightforward. Under Elstad, if a pre-advisement statement is voluntary, Miranda warnings given and validly waived before the post-advisement statement render the later statement admissible. See Elstad, 470 U.S. at 318. The trial court found that all of Veriganâs statements in the pre-advisement interrogation were voluntary. In her brief, Verigan states that she âdoes not appeal the trial courtâs order with respect to voluntariness.â Because she concedes that her pre-advisement statements were voluntary and she does not argue that her waiver before her post-advisement statements was invalid, we conclude that her pre-advisement statements, although obtained in âtechnicalâ violation of Miranda, did not render her post-advisement statements inadmissible. Id. (â[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabledÂ from waving his rights and confessing after he has been given the requisite Miranda warnings.â).

 D. Trial Courtâs Error Does Not Require Reversal

 Â¶38Â Â Â Â Â Â Â Â  As explained above, the trial courtâs only error was admitting Veriganâs pre-advisement statements. This error requires reversal unless we determine that it was harmless beyond a reasonable doubt. See People v. Carter, 2015 COA 36, Â¶14. Because all of the improperly admitted statements that Verigan made in the pre-advisement statement she repeated, with at least as much detail, in her properly admitted post-advisement statement, we conclude that the improper admission of the pre-advisement statements was harmless beyond a reasonable doubt.

 IV. Conclusion

 Â¶39Â Â Â Â Â Â Â Â  The judgment of conviction is affirmed.

 JUDGE FURMAN and JUDGE BOORAS concur.


 [1] Verigan asks, in deciding whether there was probable cause to search the car, that we consider that the officers did not know, and did not ask, if anyone in the car had a medical marijuana license. Because she did not raise the issue of potentially lawful medical marijuana use below, we do not address it here.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || September 24, 2015


Back