Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 53**

**No. 15SC931, <u>Verigan v. People</u>—Suppression of Statements—Two-Step Interrogation—Plurality Supreme Court Opinions—<u>Miranda v. Arizona</u>.**

This case requires the supreme court to decide (1) whether the United States Supreme Court's fractured opinion in <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), created a precedential rule that could be applied to future cases and (2) whether statements made by the petitioner after she was given <u>Miranda</u> warnings should be suppressed because the statements were made after the petitioner provided unwarned, incriminating statements to the police.

The court concludes that Justice Kennedy's concurring opinion in <u>Seibert</u>, which created an exception to the framework established in <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985), for cases involving a deliberate two-step interrogation aimed at undermining the efficiency of the <u>Miranda</u> warning, is the controlling precedent to be applied.  Applying Justice Kennedy's test here, the court concludes that the officers in this case did not engage in a two-step interrogation in a deliberate attempt to undermine the effectiveness of <u>Miranda</u> warnings provided to the petitioner.  Therefore, the court concludes that the framework from <u>Elstad</u> applies, and because the petitioner's pre- and

post-warning statements were indisputably voluntary, the court concludes that the division correctly determined that the petitioner's post-warning statements were admissible.

Accordingly, the supreme court affirms the court of appeals division's judgment.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 53

**Supreme Court Case No. 15SC931**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 12CA2069

**Petitioner:**

Kimberlie Deann Verigan,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Affirmed**
*en banc*
June 11, 2018

**Attorney for Petitioner:**
Douglas K. Wilson, Public Defender
Nathaniel E. Deakins, Deputy Public Defender
    *Denver, Colorado*

**Attorney for Respondent:**
Cynthia H. Coffman, Attorney General
Jillian J. Price, Assistant Attorney General
    *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 This case requires us to decide whether the Supreme Court's fractured opinion in Missouri v. Seibert, 542 U.S. 600 (2004), created a precedential rule that could be applied in future cases.[1]

¶2 After pulling over Kimberlie Verigan's car during a traffic stop, police noticed potential contraband in the car. Police then searched the car and without providing the warnings required by the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436 (1966), questioned Verigan. After Verigan admitted to possessing methamphetamines, the police arrested her and brought her to a police station, where she received Miranda warnings, waived her rights, and again confessed to possessing methamphetamines.

¶3 Verigan ultimately moved to suppress her statements, asserting, as pertinent here, that the police had obtained her second confession through the use of the type of two-stage interrogation technique that a majority of the Supreme Court had ruled impermissible in Seibert. The trial court denied Verigan's motion, and Verigan was subsequently convicted. She then appealed, and a division of the court of appeals affirmed, reasoning that because Seibert was a fractured opinion with no agreement by a majority on the principles of law to be applied, Seibert did not announce a precedential rule. See People v. Verigan, 2015 COA 132, ¶ 36, ___ P.3d ___. The

---

[1] Specifically, we granted certiorari to review the following issue:

> Whether the Court of Appeals erred in concluding that the fractured opinion in Missouri v. Seibert, 542 U.S. 600 (2004), created no precedential rule such that Oregon v. Elstad, 470 U.S. 298 (1985), continues to control the admissibility of warned confessions that follow initial unwarned confessions.

2

division therefore applied the pre-Seibert rule set forth in Oregon v. Elstad, 470 U.S. 298 (1985), and concluded that because Verigan's statements were admittedly voluntary, they were admissible.  Id. at ¶¶ 36–37.

¶4     We now affirm the division's judgment, but our reasoning differs from that on which the division relied.  Specifically, unlike the division, we join the vast majority of courts that have addressed the issue now before us and conclude that Justice Kennedy's concurring opinion in Seibert, which enunciated the "narrowest grounds" on which the members of the majority concurred, is the controlling precedent to be applied.  Applying Justice Kennedy's test here, we conclude that the officers in this case did not engage in a two-step interrogation in a deliberate attempt to undermine the effectiveness of the Miranda warnings provided to Verigan.  Accordingly, Elstad applies, and because Verigan's pre- and post-warning statements were indisputably voluntary, the division correctly determined that Verigan's post-warning statements were admissible.  We therefore affirm the division's judgment.

## I.  Facts and Procedural History

¶5     At approximately 6:00 a.m. one morning, Officers Brewer and Mitchell of the Colorado Springs police department observed a car driven by Shane Smith slowly roll through a stop sign.  Verigan, who owned the car, was sitting in the front passenger seat, and another man, a co-worker, was sitting behind her in the backseat.  The three were on their way to work at a home renovation project.

3

¶6 The officers activated their lights and initiated a traffic stop. Smith then pulled into the driveway of the work site, a private residence, and the officers parked behind Verigan's car, blocking about half of the driveway.

¶7 When the officers determined that Smith did not have a driver's license, they placed Smith in the backseat of the police car. The officers then approached the car to speak with Verigan, and Verigan told them that the car belonged to her. The officers asked Verigan for her insurance and registration cards, and while she was looking for those documents, Officer Mitchell noticed a marijuana pipe and an unmarked pill bottle in plain view inside the car.

¶8 The officers then had the remaining passengers step out of the car so that they could search it. While Officer Brewer conducted this search, Officer Mitchell led Verigan a short distance away from the vehicle and asked her if there was anything illegal in the vehicle, to which Verigan responded, "There may be," because she saw a man who had been in a nearby car walk up during the initial part of the traffic stop and drop a baggy inside. Verigan and Officer Mitchell also made casual conversation.

¶9 In the meantime, Officer Brewer discovered a backpack containing a camera case. The camera case contained a lighter, cut straws, methamphetamine pipes, and two small baggies, one with a "brownish crystal-type substance and one with a white crystal-type substance" (these substances were later determined to be methamphetamine). Officer Brewer also found "women's items," such as makeup, in the backpack. He placed these items on the roof of the car and advised Officer Mitchell

4

to detain Verigan until they could determine who had possession of the backpack. Officer Mitchell felt that Verigan was not free to leave at this point.

¶10    Officer Mitchell then turned to Verigan and asked her if she had anything illegal on her. She responded that she had a knife, and Officer Mitchell patted her down and recovered a box cutter from her pants pocket. He also felt several smaller objects inside her pockets. Verigan stated that it would be painful for the officer to search her more thoroughly because she had fallen and was injured. Officer Mitchell replied that he would have to call a female officer to come do a more thorough search. Because he believed that Verigan was in true pain, however, and because he did not want to cause her any unnecessary discomfort, he told her that it would be in her best interest "just to cooperate" and tell him if she had anything illegal on her person. She then admitted that she had a small baggy of methamphetamine in her pocket.

¶11    After Verigan admitted to having the baggy of methamphetamine on her person, Officer Mitchell walked her back to her car, and Officer Brewer asked if the items on the roof of the car and the items in the backpack were hers. In doing so, Officer Brewer indicated that his goal in asking questions at the scene was to determine who owned the recovered methamphetamine. Verigan replied that "the backpack was basically everybody's, but mostly hers, and that the camera case in particular had been handed to her by [the backseat passenger]." At no point during this encounter did either of the officers provide Verigan with a Miranda warning.

¶12    At approximately 6:20 a.m., the officers arrested Verigan and brought her to the police station. There, at 7:34 a.m., Officer Brewer advised Verigan of her Miranda

5

rights. Verigan stated that she understood her rights and that she wished to talk to the officer. Officer Brewer then asked Verigan about the methamphetamine in the backpack, the brown substance that he had found, how long Verigan had been using methamphetamine, and whether the methamphetamine in her pocket belonged to her. Consistent with what she had said at the scene, Verigan responded that "the backpack was kind of everybody's backpack who was in the vehicle. Everybody had some stuff in there." She also said that she had been using methamphetamine since 1999 and admitted that the baggy of methamphetamine found in her pocket belonged to her. She further said that the "brown substance" was methamphetamine residue, and she explained how a person could smoke it.

¶13 Verigan was subsequently charged with one count of possession of methamphetamine and one count of possession of drug paraphernalia, and as pertinent here, she moved to suppress her unwarned statements during the traffic stop and the statements that she made at the police station after waiving her <u>Miranda</u> rights. The trial court held a hearing on this motion and denied it, concluding that because Verigan was not in custody when the officers questioned her at the scene, the officers were not required to provide <u>Miranda</u> warnings. Accordingly, the court concluded that Verigan's pre- and indisputably voluntary post-<u>Miranda</u> statements were admissible.

¶14 A jury ultimately convicted Verigan as charged, and Verigan appealed, arguing that the trial court had erroneously denied her motion to suppress. Specifically, Verigan argued that (1) her initial statements at the scene should have been suppressed because they were the product of a custodial interrogation without the benefit of

6

Miranda warnings and (2) her subsequent warned statements at the police station should have been suppressed under the plurality opinion's analysis in Seibert.

¶15    In a unanimous, published decision, a division of the court of appeals affirmed Verigan's conviction. Verigan, ¶ 39. As pertinent here, the division concluded that Verigan was the subject of a custodial interrogation at the scene, and therefore her unwarned statements there should have been suppressed. Id. at ¶ 27. The division rejected, however, Verigan's argument that the statements that she made at the police station also should have been suppressed. Id. at ¶ 37. The court concluded that the various opinions in Seibert did not announce a precedential rule that binds lower courts because the plurality opinion and Justice Kennedy's concurring opinion were "mutually exclusive" and therefore, the division could not discern a "narrowest ground" on which the five justices had agreed. Id. at ¶¶ 35−36. The division thus concluded that Elstad remained the prevailing law, and under the standard articulated in that case, because Verigan's pre- and post-warning statements were voluntary, her post-warning statements were admissible. Id. at ¶¶ 36−37.

¶16    Verigan petitioned this court for certiorari review, and we granted her petition.

## II. Analysis

¶17    We begin by setting forth the applicable standard of review. We then discuss the Supreme Court's precedent on the admissibility of statements from two-step interrogations and the Court's decision in Seibert. We next apply the Supreme Court's test for determining the governing rule from fractured opinions such as Seibert and conclude that the test set forth in Justice Kennedy's concurring opinion in that case

7

represents the case's precedential rule.  Finally, we apply the test set forth in Justice Kennedy's opinion to the facts before us.

## A.  Standard of Review

¶18    When reviewing a suppression order, we defer to the trial court's factual findings if they are supported by competent evidence in the record.  People v. Sotelo, 2014 CO 74, ¶ 18, 336 P.3d 188, 191.  We review the trial court's legal conclusions de novo, however, and reverse if the trial court applied an erroneous legal standard or came to a conclusion of constitutional law that is not supported by the factual findings. Id.

## B.  Miranda and Two-Step Interrogations

¶19    The Fifth Amendment to the United States Constitution provides, in pertinent part, "No person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In Miranda, 384 U.S. at 460–61, 467, the Supreme Court determined that this right applies in the context of a custodial police interrogation, which the Court noted is an inherently coercive environment.  To combat the pressures that such an environment creates and that tend to undermine an individual's will to resist and thus compel him or her to speak when he or she would not otherwise do so, the Court concluded that "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." Id. at 467.  If a suspect is subjected to custodial interrogation without receiving the now-familiar Miranda advisement and without validly waiving his or her right to remain silent, then statements made by the suspect in the course of such an

8

interrogation are presumed to be compelled and are inadmissible during the prosecution's case-in-chief, subject to certain exceptions. See Elstad, 470 U.S. at 317–18.

¶20 The present case involves the scenario in which a suspect in custody is interrogated and confesses before receiving Miranda warnings, is then given the warnings, and then confesses again. The Supreme Court has twice addressed this type of two-step interrogation.

¶21 First, in Elstad, the defendant made incriminating statements while two police officers were at his home investigating a robbery. Id. at 300–01. At the time the defendant made the incriminating statements, he had not received Miranda warnings. Id. at 301. The officers then transported the defendant to the police station and provided Miranda warnings, after which the defendant repeated his prior incriminating statements. Id.

¶22 The defendant subsequently moved to suppress his post-warning confession, arguing that that confession was the "fruit of the poisonous tree" because it was tainted by the earlier, unwarned, incriminating comments. Id. at 302. The Supreme Court rejected this argument, concluding, "Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." Id. at 309. The Court then reasoned that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" with respect to the post-warning confession. Id. at 314. Thus, under Elstad, if the pre-warning

9

statement was the product of uncoercive questioning and the suspect voluntarily waived his or her rights prior to the post-warning statement, then the post-warning statement is admissible if it was knowingly and voluntarily made. Id. at 309, 318.

¶23 Second, in Seibert, the Court addressed the use of a two-step interrogation strategy whereby police would (1) purposefully question a defendant prior to giving the required Miranda warnings and elicit incriminating statements and (2) then provide the defendant with Miranda warnings and ask him or her to repeat the previous incriminating statements. Seibert, 542 U.S. at 609–11 (plurality opinion).

¶24 In Seibert, the police arrested the defendant and, pursuant to instructions from another officer, did not provide Miranda warnings. Id. at 604. The officer who had issued the instruction not to provide Miranda warnings then interrogated the unwarned defendant at the police station and elicited a confession. Id. at 604−05. Once this was accomplished, the officer gave the defendant a twenty-minute break, after which he turned on a tape recorder, provided the defendant with Miranda warnings, obtained a signed waiver of rights, and resumed questioning. Id. at 605. During the second round of questioning, the interrogator repeated statements made by the defendant during the previous, unwarned confession, and asked the defendant to confirm that they were accurate. Id. The defendant did so, and the court admitted the second confession into evidence during her trial. Id. at 606. Notably, the evidence showed that the police had deliberately employed this two-part interrogation technique in order to obtain the confession. See id. at 605–06. Indeed, the evidence showed that the police had been specifically trained to employ this technique. Id. at 606.

10

¶25    A majority of the Supreme Court determined that the defendant's second, warned confession should be suppressed, but the majority could not fully agree on a rationale.  See id. at 615–17 (plurality opinion), 618–22 (Kennedy, J., concurring in the judgment).  Justice Souter, writing for a four-member plurality, noted, "Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again."  Id. at 613 (plurality opinion).  The plurality then articulated five "relevant facts" that bear on whether Miranda warnings delivered "midstream" like this could be effective enough to accomplish their object:

> the completeness and detail of the questions and answers in the first round of questioning, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

Id. at 615.

¶26    The plurality opined that the application of these factors in the case before it "must be seen as challenging the comprehensibility and efficacy of the Miranda warnings to the point that a reasonable person in the suspect's shoes would not have understood them to convey a message that she retained a choice about continuing to talk."  Id. at 617.  The plurality thus concluded, "Because the question-first tactic effectively threatens to thwart Miranda's purpose of reducing the risk that a coerced confession would be admitted, and because the facts here do not reasonably support a

conclusion that the warnings given could have served their purpose, Seibert's postwarning statements are inadmissible." Id.

¶27     Justice Kennedy concurred in the judgment. In his concurring opinion, he agreed with the plurality's conclusion that the post-warning statements should be suppressed, but he believed that the plurality's test "cut[] too broadly" because it applied to instances of both intentional and unintentional two-stage interrogations. Id. at 622 (Kennedy, J., concurring in the judgment). Justice Kennedy thus would have applied a "narrower test applicable only in the infrequent case . . . in which the two-step interrogation technique was used in a calculated way to undermine the Miranda warning." Id. If such a deliberate two-step interrogation strategy was used, then any post-warning statements that were related to the substance of the pre-warning statements would be inadmissible unless "curative measures" were taken "to ensure that a reasonable person in the suspect's situation would understand the import and effect of the Miranda warning and the Miranda waiver." Id. Justice Kennedy provided two non-exclusive examples of such curative measures: (1) "a substantial break in time and circumstances between the prewarning statement and the Miranda warning" because such a break would "allow[] the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn" and (2) "an additional warning that explains the likely inadmissibility of the prewarning custodial statement." Id.

¶28     In Justice Kennedy's view, absent such a deliberate two-step strategy, the admissibility of any post-warning statements would continue to be governed by the voluntariness standard set forth in Elstad. See id. Thus, Justice Kennedy's position

essentially created an exception to <u>Elstad</u> for cases of deliberate two-step interrogations aimed at undermining the efficacy of the <u>Miranda</u> warnings.

¶29    In the case before him, because the officers admitted that they had deliberately withheld the <u>Miranda</u> warnings during the initial interrogation, and because no curative measures were taken to ensure that the later warnings effectively advised the defendant of her rights, Justice Kennedy joined the plurality in concluding that the defendant's post-warning statements were inadmissible.  <u>Id.</u>

¶30    Justice O'Connor, writing for the four dissenting justices, rejected an intent-based test of the type suggested by Justice Kennedy because in her view, when determining whether a warning is effective, the focus should be on the defendant's capacity to understand and knowingly relinquish the right to remain silent, not on the interrogating officer's state of mind.  <u>Id.</u> at 625, 627 (O'Connor, J., dissenting).[2]  The dissenting justices thus believed that <u>Elstad</u> should govern in all cases.  <u>Id.</u> at 628.

## C. <u>Seibert</u>'s Governing Rule

¶31    This court has not yet examined which, if any, of <u>Seibert</u>'s opinions enunciated the governing rule in that case.  We have, however, acknowledged the Supreme Court's longstanding principle that when that Court issues a fractured opinion providing no clear holding, the holding "may be viewed as that position taken by those Members

---

[2] The plurality likewise focused on the objective facts, noting, "Because the intent of the officer will rarely be as candidly admitted as it was here (even as it is likely to determine the conduct of the interrogation), the focus is on facts apart from intent that show the question-first tactic at work."  <u>Id.</u> at 616 n.6 (plurality opinion).

who concurred in the judgments on the narrowest grounds." Align Corp. v. Boustred, 2017 CO 103, ¶ 24, ___ P.3d ___ (quoting Marks v. United States, 430 U.S. 188, 193 (1977)).[3]

¶32 The question thus becomes which opinion in Seibert, if any, reached its conclusion on the narrowest grounds. In considering this issue, the overwhelming majority of courts to have addressed the matter have concluded that Justice Kennedy's concurring opinion provided such "narrowest grounds" and therefore represents Seibert's governing rule. See, e.g., United States v. Torres-Lona, 491 F.3d 750, 758 (8th Cir. 2007) ("We treat Justice Kennedy's concurrence as controlling since it provided the fifth vote necessary for a majority and since it was decided on narrower grounds than the plurality opinion."); United States v. Carter, 489 F.3d 528, 536 (2d Cir. 2007) (applying Justice Kennedy's approach in Seibert and holding that "Seibert lays out an exception to Elstad for cases in which a deliberate, two-step strategy was used by law enforcement to obtain the postwarning confession"); United States v. Street, 472 F.3d

_____

[3] Applying this rule has proven more difficult than reciting it. Some courts have opined that the Marks rule produces a determinate holding "only when one opinion is a logical subset of other, broader opinions." King v. Palmer, 950 F.2d 771, 781 (D.C. Cir. 1991). Sometimes, however, neither the plurality opinion's reasoning nor that of the concurring opinion can be said to be a logical subset of the other. The Supreme Court granted certiorari to consider, among other things, whether Marks means that the concurring opinion represents the holding of the Court in that situation, but the Court ultimately found it unnecessary to consider that issue in the case before it. See Hughes v. United States, No. 17-155, 2018 WL 2465187, at *4 (U.S. June 4, 2018). We need not wade into this issue here, however, because as more fully set forth below, we believe that we can discern a narrowest ground on which five justices in Seibert agreed.

14

1298, 1313 (11th Cir. 2006) ("Because <u>Seibert</u> is a plurality decision and Justice Kennedy concurred in the result on the narrowest grounds, it is his concurring opinion that provides the controlling law."); <u>United States v. Courtney</u>, 463 F.3d 333, 338 (5th Cir. 2006) ("<u>Seibert</u> requires the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken; where that strategy is not used, '[t]he admissibility of postwarning statements [] continue[s] to be governed by the principles of <u>Elstad</u>.'") (quoting <u>Seibert</u>, 542 U.S. at 622 (Kennedy, J., concurring in the judgment)); <u>United States v. Kiam</u>, 432 F.3d 524, 532 (3d Cir. 2006) ("This court applies the <u>Seibert</u> plurality as narrowed by Justice Kennedy."); <u>United States v. Mashburn</u>, 406 F.3d 303, 309 (4th Cir. 2005) (noting that because Justice Kennedy's concurring opinion set forth a narrower test than that enumerated by the plurality, that opinion "represents the holding of the <u>Seibert</u> Court"); <u>State v. Bruce</u>, 169 So. 3d 671, 679 (La. Ct. App. 2015) ("[T]he holding of <u>Seibert</u> is found in Justice Kennedy's opinion concurring in judgment."); <u>State v. Nightingale</u>, 58 A.3d 1057, 1067 (Me. 2012) ("We now follow the majority of the federal circuits in applying Justice Kennedy's <u>Seibert</u> analysis."); <u>State v. Fleurie</u>, 968 A.2d 326, 332–33 (Vt. 2008) ("Justice Kennedy's concurrence is narrower than the plurality's since it does not apply to all two-step interrogations, only those involving intentional police misconduct.").

¶33    The rationale of these cases is perhaps best summarized in the Ninth Circuit's opinion in <u>United States v. Williams</u>, 435 F.3d 1148, 1157 (9th Cir. 2006):

> Although the plurality would consider all two-stage interrogations eligible for a <u>Seibert</u> inquiry, Justice Kennedy's opinion narrowed the <u>Seibert</u> exception to those cases involving deliberate use of the two-step

15

procedure to weaken <u>Miranda</u>'s protections. . . .  In other words, both the plurality and Justice Kennedy agree that where law enforcement officers <u>deliberately</u> employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warnings are absent or fail to apprise a <u>reasonable person</u> in the suspect's shoes of his rights, the trial court should suppress the confession.  This narrow test—that excludes confessions made after a deliberate, objectively ineffective mid-stream warning—represents <u>Seibert</u>'s holding.

(Footnote omitted.)

¶34    We are persuaded by this analysis and agree that Justice Kennedy's opinion concurring in the judgment in <u>Seibert</u> provided the narrowest ground on which five justices there agreed.  Accordingly, we conclude, contrary to the division below, that <u>Seibert</u> does create a precedential rule, namely, the rule set forth in Justice Kennedy's concurring opinion.  Thus, when making a suppression determination in a case such as this, a trial court should conduct an initial inquiry into whether the People have proved by a preponderance of the evidence that the police did not deliberately use a two-step interrogation procedure to obtain a confession.  If the court determines that the use of the procedure was deliberate, then the court should determine whether curative measures (e.g., an additional warning or a substantial break in time and circumstances between the pre- and post-warning statements) were employed, such that the suspect would understand the import and effect of the warning at the time of the later statement.  If not, then the statements are inadmissible.  If, however, the trial court determines that the People proved that the police did not deliberately use a two-step technique to undermine <u>Miranda</u>, then it should apply the voluntariness test enunciated in <u>Elstad</u>.

16

¶35　To conclude otherwise and to hold, as the People urge, that Elstad continues to provide the prevailing rule even when the police employ a deliberate two-step strategy to obtain a confession would require us to adopt the Seibert dissent as the governing rule of that case. We perceive no basis for doing so, especially given that the Supreme Court itself has cited the Seibert plurality and Justice Kennedy's concurring opinion with approval and as precedent. See Bobby v. Dixon, 565 U.S. 23, 31–32 (2011) (per curiam).

¶36　In reaching this conclusion, we are not persuaded by the People's assertion that the plurality opinion and Justice Kennedy's concurring opinion in Seibert are mutually exclusive, such that no analysis garnered five votes of the Court. Notably, Justice Kennedy stated near the very beginning of his opinion, "The plurality opinion is correct to conclude that statements obtained through the use of [the two-step interrogation] technique are inadmissible." Seibert, 542 U.S. at 618 (Kennedy, J., concurring in the judgment). He further noted that he "agree[d] with much in the careful and convincing opinion for the plurality," although his approach differed "in some respects." Id.

¶37　A review of these respective opinions confirms the substantial agreement between them. For example, both the plurality and Justice Kennedy agreed that a deliberate two-step interrogation process aimed at circumventing Miranda's purpose and that prevents a suspect from understanding that he or she can choose not to talk renders a resulting confession inadmissible. Id. at 617 (plurality opinion), 622 (Kennedy, J., concurring in the judgment). Likewise, the plurality and Justice Kennedy agreed that in certain situations, a court should examine whether the circumstances

17

surrounding the post-warning statement reasonably conveyed to the suspect his or her rights as required by Miranda. See Seibert, 542 U.S. at 611 (plurality opinion), 621 (Kennedy., J. concurring in the judgment). The majority enunciated five objective factors for making this determination, while Justice Kennedy provided the more general, though still objective, "curative measures" that could be taken to ensure that a reasonable person was aware of his or her rights. We do not perceive a substantial difference between these two approaches, as both provide similar objective factors aimed at determining whether a Miranda warning delivered "midstream" could be effective enough to ensure that a reasonable person in the suspect's situation would understand the import and effect of the Miranda warnings and of a Miranda waiver. See, e.g., Williams, 435 F.3d at 1158.

¶38     Accordingly, we conclude that Justice Kennedy's opinion provides the narrowest ground on which the holding in Seibert rested and thus is the controlling law. We now proceed to apply the test set forth in Justice Kennedy's opinion to the facts before us.

### D. Application

¶39     As a preliminary matter, we note that no party challenges the division's conclusion that Verigan was subject to custodial interrogation at the scene. We therefore assume that the officers should have administered Miranda warnings to Verigan at the scene and that her pre-warning statements were inadmissible. See Elstad, 470 U.S. at 317. The question thus remains whether Verigan's post-warning statements are inadmissible as the product of a deliberate two-stage interrogation

18

aimed at undermining the "meaning and effect" of the <u>Miranda</u> warnings. <u>Seibert</u>, 542 U.S. at 621 (Kennedy, J., concurring in the judgment).

¶40 To decide this question, courts have looked to "the totality of the circumstances," including both objective and subjective evidence. <u>See, e.g.</u>, <u>United States v. Capers</u>, 627 F.3d 470, 479 (2d Cir. 2010) ("[W]e join our sister circuits in concluding that a court should review the totality of the objective and subjective evidence surrounding the interrogations in order to determine deliberateness, with a recognition that in most instances the inquiry will rely heavily, if not entirely, upon objective evidence."); <u>Nightingale</u>, 58 A.3d at 1068 (noting that in determining whether the two-step interrogation was deliberate, courts must consider the totality of the objective and subjective evidence). Such evidence may include the officer's testimony, as well as objective evidence such as "the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarning statements." <u>Williams</u>, 435 F.3d at 1159; <u>see also</u> <u>Street</u>, 472 F.3d at 1314 ("[W]e consider the totality of the circumstances including 'the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and post-warning statements.") (quoting <u>Williams</u>, 435 F.3d at 1159).

¶41 We agree with this approach because by looking at both subjective and objective evidence of deliberateness, courts will better be able to ensure that law enforcement officers do not circumvent the right against self-incrimination through the use of

19

interrogation practices likely to prevent a suspect from making a free and rational choice about speaking. See Williams, 435 F.3d at 1159.

¶42    Here, we conclude that the totality of the circumstances does not support a determination that the officers deliberately engaged in a two-step interrogation procedure with the intent to undermine the Miranda warnings.  The officers found themselves in a rapidly developing situation evolving from an initial traffic stop for a minor infraction to an arrest for possession of methamphetamine within a very short amount of time.  Specifically, the record shows that only twenty minutes passed between the time of the initial stop and Verigan's arrest and that the officers detained and questioned Verigan for only a portion of that time.  The record further reveals that the officers' questions were narrowly aimed at determining how to proceed once the officers discovered contraband and did not evince an attempt to coerce a confession prior to arresting Verigan and providing the Miranda warnings.  In stark contrast, the pre-warning interrogation in Seibert lasted for thirty to forty minutes and took place in the police station after arresting Seibert and pursuant to a concededly deliberate effort to engage in a two-step interrogation technique aimed at undermining the efficacy of the Miranda warnings.  Seibert, 542 U.S. at 604 (plurality opinion).

¶43    Additionally, although Officer Brewer asked Verigan questions both at the scene and at the police station, indicating some continuation of police personnel, Officer Mitchell asked Verigan the majority of the questions at the scene, while Officer Brewer conducted the interrogation at the police station.  The record contains no evidence that Officer Mitchell discussed his interrogation with Officer Brewer, and significantly, it

20

does not appear that Officer Brewer referred in the stationhouse interrogation to the statements that Verigan had made to Officer Mitchell at the scene, a fact that distinguishes this case from Seibert. Indeed, Verigan admitted a number of things during the stationhouse interrogation that were not part of her statements at the scene. For example, at the stationhouse, Verigan conceded that she had been using methamphetamine for years and that the "brownish crystal-type substance" that the officers had recovered was methamphetamine. Finally, the two interrogations occurred in different locations, with the first being conducted somewhat informally at the scene and the second being conducted more formally at a police station. This allowed Verigan to distinguish the two contexts and appreciate that her interrogation had taken a new turn. See id. at 622 (Kennedy, J., concurring in the judgment).

¶44 Viewing all of these facts in their totality, we conclude that the record does not support a finding that the police acted deliberately to undermine the efficacy of the Miranda warnings provided to Verigan.

¶45 Accordingly, the exception to Elstad created by Justice Kennedy's concurring opinion in Seibert does not apply, and we must review Verigan's post-warning statement under the voluntariness standard enunciated in Elstad. As stated above, under Elstad, if a pre-advisement statement is uncoerced, Miranda warnings given later that result in a valid waiver of the right to remain silent render a post-advisement statement admissible, assuming that that statement was given knowingly and voluntarily. See Elstad, 470 U.S. at 318. Here, Verigan did not appeal the trial court's finding that her initial statement was voluntary, and she has not argued that her later

statement was unknowing or involuntary despite the <u>Miranda</u> warning. As a result, we conclude that under <u>Elstad</u>, Verigan's post-warning confession at the police station was admissible.

### III. Conclusion

¶46     For these reasons, unlike the division below, we conclude that <u>Seibert</u> created a precedential rule, namely, the rule articulated in Justice Kennedy's concurring opinion in that case, which established an exception to the <u>Elstad</u> rule for cases involving a deliberate two-step interrogation aimed at undermining the efficacy of the <u>Miranda</u> warnings. Applying that rule here, we conclude that the record does not establish a deliberate two-step interrogation. Therefore, <u>Elstad</u> applies, and under <u>Elstad</u>, because Verigan's pre- and post-<u>Miranda</u> statements were voluntary, the post-<u>Miranda</u> statements were admissible.

¶47     Accordingly, we affirm the division's judgment.