Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
July 1, 2019

**2019 CO 72**

**No. 17SC144, *Phillips v. People*—Waiver Versus Forfeiture—Unpreserved Arguments to Suppress Statements and Evidence—Plain Error Review.**

In a pretrial motion, the defendant sought to suppress his statements at a police station and the handgun recovered during a search of his car. The trial court denied both requests and, following a conviction, the defendant appealed the two rulings. However, on appeal, the defendant raised a new argument with respect to each evidentiary item. A division of the court of appeals denied him relief, ruling that he had waived the right to advance the unpreserved contentions.

The supreme court agrees with the division that the claims were not preserved. But it determines that no waiver occurred. Instead, relying on *People v. Rediger*, 2018 CO 32, 416 P.3d 893, it holds that the claims were forfeited and are thus subject to plain error review. Upon undertaking such review, the court concludes that the trial court did not err in admitting the police-station statements and that the record does not establish that the admission of the gun was plain error.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

### 2019 CO 72

---

### Supreme Court Case No. 17SC144
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA2482

---

**Petitioner:**

Leo Phillips,

v.

**Respondent:**

The People of the State of Colorado.

---

### Judgment Affirmed
*en banc*
July 1, 2019

---

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Shann Jeffery, Deputy Public Defender
    *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Majid Yazdi, Assistant Attorney General
    *Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.
**JUSTICE HOOD** concurs in the judgment only, and **CHIEF JUSTICE COATS** and **JUSTICE MÁRQUEZ** join in the concurrence in the judgment only.

¶1    The prosecution charged Leo Phillips with possession of a weapon by a previous offender and driving under restraint. Before trial, defense counsel moved to suppress three pieces of evidence: (1) Phillips's statements inside a police car; (2) his subsequent statements at a police station; and (3) a handgun recovered during a search of his car. The trial court suppressed the police-car statements, but not the police-station statements or the gun. The jury found Phillips guilty as charged. On appeal, Phillips challenged the trial court's admission of both his police-station statements and the gun. However, for each claim, he relied on an argument he had not made to the trial court. A division of the court of appeals denied him relief in an unpublished opinion, ruling that he had waived the right to advance the two claims of error.

¶2    We agree with the division that Phillips failed to preserve his appellate claims. But we find that no waiver occurred. Instead, relying on *People v. Rediger*, 2018 CO 32, 416 P.3d 893, which we announced after the division's decision, we hold that Phillips forfeited the claims and that the claims are thus subject to plain error review. Upon conducting such review, we conclude that the trial court did not err in admitting the police-station statements and that the record does not establish that the admission of the gun was plain error. Accordingly, we affirm the division's judgment, albeit on other grounds.[1]

---

[1] In *People v. Cardman*, 2019 CO 73, __ P.3d __, a companion case we announce today, we likewise determine that the unpreserved suppression claim was forfeited, not waived,

## I. Facts and Procedural History

¶3     Detective Christopher Fish conducted a traffic stop of Phillips's car based on information that Phillips was driving with a suspended license. After Phillips admitted that he did not have a valid driver's license, the detective ordered him out of the car. Phillips's two passengers, an adult in the front seat and a child in the back seat, remained inside.

¶4     Following a pat down for weapons, the detective placed Phillips in the back of his police car. The detective told Phillips that he was being detained and would be issued "at least a summons" for the driver's license violation. Phillips was not handcuffed. Through the sliding window dividing the front and back seats of the police car, the detective questioned Phillips without first advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Specifically, the detective asked Phillips about the suspension of his driver's license and his possible involvement in the sale of narcotics and possession of firearms. Phillips denied any such involvement, but admitted he had a felony conviction out of Illinois for possession of drugs. According to the detective, Phillips then consented to a search of his vehicle, even though he was advised that he had the right to refuse permission. The search of Phillips's car, which was conducted by another officer, yielded a gun underneath the driver's seat. The detective informed

and is thus reviewable for plain error. There, however, we rule that the trial court committed plain error.

3

Phillips at that point that he would be transported to the police station to discuss his possession of a firearm as a convicted felon.

¶5 At the police station, the detective advised Phillips of his *Miranda* rights, and Phillips waived those rights and agreed to talk with the detective. During the interrogation, Phillips said that the gun recovered from his car belonged to his cousin, though he refused to identify him by name. The prosecution later charged Phillips with possession of a weapon by a previous offender and driving under restraint.

¶6 Before trial, Phillips sought to suppress (1) the statements he made in the police car, (2) his subsequent statements at the police station, and (3) the gun found in his car. The trial court suppressed the statements Phillips made in the police car, finding that they were obtained in violation of *Miranda*. But the court admitted into evidence both the statements Phillips made at the police station (reasoning that they were obtained after an advisement of his *Miranda* rights and his valid waiver of those rights) and the gun (reasoning that Phillips consented to the search of his car).

¶7 Phillips argued at trial that, while he was detained, the adult passenger in his car placed the gun under the driver's seat. A jury rejected that defense and found Phillips guilty. The court then sentenced him to probation.

¶8 On appeal, Phillips maintained that the trial court erred in admitting his police-station statements because they were the inadmissible fruit of the earlier unconstitutionally obtained statements in the police car. Additionally, he asserted that his consent to search his car was tainted and rendered involuntary by the interrogation in the police car. Although Phillips had challenged the admission of both the

4

police-station statements and the gun at the trial court, he had not previously raised either of these arguments. The division declined to address Phillips's claims on the merits, concluding that they were unpreserved and waived.

¶9      Phillips petitioned for certiorari review, and we granted his petition.[2]

## II. Analysis

¶10      We first address whether Phillips preserved his two appellate claims. After concluding that he did not, we analyze whether he waived them. We rule that he did not and that, instead, he forfeited them, which means that they are subject to plain error review. As to the unpreserved claim related to the admission of the police-station statements, we conclude that the trial court did not err, much less plainly err. As to the unpreserved claim related to the admission of the gun, we conclude that the record does not establish that the trial court plainly erred. Accordingly, we affirm the division's judgment on other grounds.

---

[2] We granted certiorari to review the following two issues:

1. Whether the court of appeals reversibly erred when it held that petitioner waived his right to challenge the admission of his police station statements on the grounds that they were tainted by his earlier unconstitutional interrogation.

2. Whether the court of appeals reversibly erred when it held that petitioner waived his right to challenge the admission of the gun that was seized from his vehicle on voluntariness grounds.

5

## A. Phillips Did Not Preserve His Appellate Claims

¶11 The division ruled that Phillips did not preserve his appellate claims for review. We agree.

¶12 Motions to suppress "should state with reasonable specificity the legal grounds upon which [they] are based" in order "to put the prosecution on notice of the contentions it must be prepared to meet at a suppression hearing and to inform the court of the issues to be decided." *People v. Jansen*, 713 P.2d 907, 912 n.8 (Colo. 1986). By requiring that the defendant set forth "the particular grounds for the objection or motion," courts ensure not only that the prosecution will have "a full and fair opportunity to present relevant evidence and argument with regard to it," but also that the court will have "an opportunity to correct any error that could otherwise jeopardize the defendant's right to a fair trial." *People v. Cordova*, 293 P.3d 114, 120 (Colo. App. 2011). It follows that "[t]o preserve a claim for review on appeal, the party claiming error must have supplied the right ground for the request." *Novak v. Craven*, 195 P.3d 1115, 1120 (Colo. App. 2008) (quoting *Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8, 15 (1st Cir. 1999)). For this reason, simply advancing "conclusory, boilerplate contention[s]" does not suffice to preserve a suppression issue for appeal. *People v. Samuels*, 228 P.3d 229, 238 (Colo. App. 2009). As the U.S. Court of Appeals for the First Circuit eloquently put it, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . ." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

¶13 Here, Phillips argued to the trial court that his statements at the police station should be suppressed because Detective Fish's testimony was insufficient to establish

6

that he received and then waived his *Miranda* rights. On appeal, though, Phillips sang a different tune: He maintained that his police-station statements should be suppressed because they were tainted and rendered inadmissible by the earlier unconstitutionally obtained statements in the police car. True enough, Phillips's motion to suppress generically alleged that the prosecution bore the burden to establish "that a derivative statement was not tainted" and was not "the fruit of a prior incriminating response resulting from [an] illegal custodial interrogation." But Phillips did not develop this boilerplate assertion, let alone apply it to the factual allegations involved in this case. Nor did he mention it later at the suppression hearing or ask the trial court to rule on its merits. Moreover, he did not cite, in his motion or at the hearing, the two watershed cases on which his appellate claim rests, *Missouri v. Seibert*, 542 U.S. 600 (2004), and *Oregon v. Elstad*, 470 U.S. 298 (1985). Under these circumstances, we agree with the division that Phillips failed to properly preserve his claim related to the statements he made at the police station. *See Feldstein v. People*, 410 P.2d 188, 191 (Colo. 1966) ("[I]t is incumbent on the moving party to see to it that the court rules on the matter he urges"; if the trial court is not "afforded the opportunity to so rule[,] . . . the matter will ordinarily not be considered on writ of error."), *abrogated on other grounds by Deeds v. People*, 747 P.2d 1266, 1269–72 (Colo. 1987).

¶14    We also agree with the division that Phillips failed to properly preserve his claim regarding the admission of the gun. At the trial court, Phillips maintained that the prosecution presented insufficient proof of a valid consent to search his car. But on appeal, he switched horses, arguing primarily that his consent was tainted because it was

7

given during a custodial interrogation that violated *Miranda*. Thus, Phillips did not present to the trial court the contention on which he relied on appeal in challenging the admission of the gun.

¶15 Having determined that Phillips did not properly preserve either claim of error, we next explore the consequences of these failures. The question is whether Phillips waived both claims, thereby foreclosing review on appeal, or whether he forfeited them, thereby rendering them reviewable for plain error.

## B. Phillips Forfeited His Claims

¶16 Rights can be waived. The doctrine of waiver is a procedural bar to appellate review based on "the *intentional* relinquishment of a *known* right or privilege." *Rediger*, ¶ 39, 416 P.3d at 902 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano*, 507 U.S. 725, 733 (1993). Although even fundamental rights can be waived, *see Peretz v. United States*, 501 U.S. 923, 936–37 (1991), we "do not presume acquiescence" in the loss of such rights; to the contrary, we "indulge every reasonable presumption against waiver," *Rediger*, ¶ 39, 416 P.3d at 902 (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)). Here, we deal with the right to seek to exclude from trial any evidence obtained in violation of the Fourth or Fifth Amendments,

8

a nonfundamental right that may be waived by defense counsel as "captain of the ship."[3]
*Curtis*, 681 P.2d at 511 (quoting *Steward v. People*, 498 P.2d 933, 934 (Colo. 1972)).

¶17    Rights can also be forfeited.  When an intentional relinquishment of a known right is not present, then "the failure to make the timely assertion of a right" is a forfeiture, not a waiver.  *Rediger*, ¶ 40, 416 P.3d at 902 (quoting *Olano*, 507 U.S. at 733).  Thus, whereas waiver requires "intent," forfeiture occurs "through neglect."  *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007) (quoting *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000)).

¶18    The distinction between waiver and forfeiture is significant because "a waiver extinguishes error, and therefore appellate review, but a forfeiture does not."  *Rediger*, ¶ 40, 416 P.3d at 902.  We review a forfeited error under the plain error standard of review.  *Id.*

¶19    As we do here, in *Rediger* we addressed a nonfundamental right which could be waived by defense counsel for strategic or other reasons.  At the close of the evidence, Rediger's attorney informed the court that he was "satisfied" with the prosecution's proposed jury instructions, even though one of the elemental instructions incorrectly tracked section 18-9-109(1)(b), C.R.S. (2018), instead of the subsection actually charged in

---

[3] The rights in question are not among those fundamental rights, such as the right to counsel, the right to testify, and the right to trial by jury, which require a knowing, voluntary, and intelligent waiver to be executed personally by the accused. *Curtis*, 681 P.2d at 511.

the complaint, section 18-9-109(2). *Rediger*, ¶¶ 8–10, 416 P.3d at 897–98. On appeal, Rediger alleged that this discrepancy amounted to a constructive amendment of the complaint. *Id.* at ¶ 12, 416 P.3d at 898. In a split decision, a division of the court of appeals held that Rediger's counsel had waived, through "affirmative acquiescence," the right to challenge the prosecution's constructive amendment of the complaint. *Id.* at ¶ 13, 416 P.3d at 898 (quoting *People v. Rediger*, 2015 COA 26, ¶ 60, 411 P.3d 907, 916).

¶20 We disagreed, explaining that "mere acquiescence to a jury instruction does not constitute a waiver without some record evidence that the defendant intentionally relinquished a known right." *Id.* at ¶ 3, 416 P.3d at 897. We noted that there was no basis to believe that Rediger's counsel "considered objecting to the erroneous instruction but then, 'for some tactical or other reason, rejected the idea.'" *Id.* at ¶ 42, 416 P.3d at 903 (quoting *United States v. Perez*, 116 F.3d 840, 845–46 (9th Cir. 1997)). Because the record did not contain any evidence that Rediger's counsel "intended to relinquish" his client's "right to be tried in conformity with the charges set forth in [the] charging document," we concluded that no waiver occurred. *Id.* at ¶¶ 42, 44, 416 P.3d at 902–03. Thus, we were unwilling to infer an intentional relinquishment from defense counsel's general acquiescence to the erroneous instruction. *See id.* at ¶ 44, 416 P.3d at 903.

¶21 We acknowledge, as we did in *Rediger*, that a waiver need not be express; it can be implied. *Id.* at ¶ 42, 416 P.3d at 902. However, the mere failure to raise an issue neither amounts to "the type of unequivocal act indicative of a waiver" nor constitutes "the type of conduct that clearly manifest[s] any intent . . . to relinquish [the] claim." *Donahue*, 690 P.2d at 247 (quoted with approval in *Rediger*, ¶ 42, 416 P.3d at 902–03). That Rediger's

10

counsel had an opportunity to review the prosecution's proposed instructions before trial, confirmed he had done so, and stated he was "satisfied" with them was not evidence that he impliedly intended to relinquish the right to object to a constructive amendment of the complaint. *See Rediger*, ¶¶ 41, 45, 416 P.3d at 902–03. Rather than infer an intentional relinquishment of a known right from counsel's acquiescence, as the prosecution seemingly urged us to do, we indulged "every reasonable presumption *against* waiver"—even for a nonfundamental right. *Id.* at ¶ 46, 416 P.3d at 903 (quoting *Curtis*, 681 P.2d at 514).

¶22    Applying *Rediger*, we conclude that Phillips did not waive his unpreserved claims. There is no evidence that defense counsel intended to relinquish Phillips's right to challenge the admissibility of the police-station statements or the gun, including pursuant to the grounds advanced for the first time on appeal. Much like the record in *Rediger*, the record before us is barren of any indication that defense counsel considered raising the unpreserved contentions before the trial court but then, for a strategic or any other reason, discarded the idea. *See id.* at ¶ 42, 416 P.3d at 902–03. That counsel failed to raise the unpreserved assertions in the trial court, without more, is not sufficient to allow us to infer that he intended to abandon those assertions on Phillips's behalf. *See id*; *Donahue*, 690 P.2d at 247. Absent evidence of an intentional relinquishment, we cannot rule that

Phillips's counsel waived the unpreserved claims.[4]  Therefore, we conclude that both claims were forfeited, not waived.  As such, they are subject to plain error review.

¶23    We are not persuaded otherwise by the federal decisions cited by the prosecution. "[T]here is a division of authority among the circuit courts as to whether arguments not raised in a motion to suppress are waived or are merely forfeited and subject to plain-error review."  *United States v. Baker*, 538 F.3d 324, 328 (5th Cir. 2008).  The federal cases in the waiver camp carry little weight with us because they take root in Fed. R. Crim. P. 12(c)(3), *see, e.g.*, *United States v. Vance*, 893 F.3d 763, 769–70 (10th Cir. 2018), which is different than its Colorado counterparts, Crim. P. 41(e) and 41(g).[5]  As relevant here, Fed. R. Crim. P. 12(c)(3) requires a party to file suppression requests before trial and provides that when a party fails to do so, "a court may consider the . . . request" if there is a showing of good cause.  Crim. P. 41(e) and 41(g), on the other hand, generally require that a motion to suppress "be made and heard before trial," but state that "the court, in its discretion, may entertain the motion at the trial."  Thus, unlike the federal rule, which

_____

[4] We should not be misunderstood as holding that an attorney's failure to file a suppression motion or to include an argument in a suppression motion will always be deemed a forfeiture.  If there is evidence in the record that defense counsel made a conscious decision to forego raising a claim for strategic or other reasons, we will not hesitate to find an implied waiver.  After all, we recognize that in some situations defense counsel will refrain from seeking the suppression of an article of evidence for strategic or other reasons.

[5] Rule 41(e) addresses motions for return of property and to suppress evidence, while Rule 41(g) addresses only motions to suppress confessions or admissions.  The relevant parts of these two rules are identical.

12

permits a court to consider *any time after trial commences, including on appeal*, untimely suppression issues, the scope of our rules is limited to a court's ability to consider such issues *at trial*. We do not infer from our rules' silence regarding post-trial proceedings that their drafters intended to treat as "waived" any untimely suppression issues raised for the first time on appeal.

¶24 In any event, a recent amendment to Fed. R. Crim. P. 12 buttresses our conclusion that Phillips forfeited his unpreserved claims: the Advisory Committee on Criminal Rules revised and reorganized Fed. R. Crim. P. 12 in 2014; in the process, it deleted a provision from subparagraph (e) (now subparagraph (c)(3)) which stated that a party "waive[d]" a suppression issue not raised in a timely fashion before trial. The committee explained that the purpose of the deletion was to avoid possible confusion because the term "waiver" "ordinarily refers to the intentional relinquishment of a known right," and "Rule 12(e) has never required any determination that a party who failed to make a timely motion intended to relinquish a . . . request that was not raised in a timely fashion." Fed. R. Crim. P. 12 advisory committee's note to 2014 amendment.

¶25 In *United States v. Soto*, the U.S. Court of Appeals for the Sixth Circuit recognized that "one of the primary reasons" for eliminating the term "waiver" from the rule was the committee's belief that "courts were incorrectly treating the failure to file a timely pretrial motion as an intentional relinquishment of a known right, and therefore an absolute bar to appellate review." 794 F.3d 635, 652 (6th Cir. 2015). The amendment's history bears this out. The chair of the Standing Committee who worked on the amendment, Judge Jeffrey Sutton, felt that it was "imperative to get rid of the term

13

'waiver,'" explaining that it was drafted before *Olano* was decided and "makes no sense now." *Id.* (quoting *Advisory Committee on Criminal Rules, Minutes* 6 (Apr. 25, 2013)).[6] The Advisory Committee apparently agreed with Judge Sutton that the term "waiver" was "'outdated in light of *Olano*'" and set out "to give the rule new meaning." *Id.* (quoting *United States v. Rose*, 538 F.3d 175, 183 (3d Cir. 2008)). Thus, "[t]he Advisory Committee's conscious decision to abandon the term 'waiver' makes its intent crystal clear: courts may no longer treat a party's failure" to raise a timely pretrial suppression claim "as an intentional relinquishment of a known right." *Id.*[7]

---

[6] In *Olano*, the U.S. Supreme Court articulated a clear differentiation between "waiver" and "forfeiture." 507 U.S. at 733. After *Olano* was announced, "the term 'waiver' in the context of Rule 12(e) caused great confusion among circuit courts about how the rule restricts appellate review." *Soto*, 794 F.3d at 649. The omission of the term "waiver" in the 2014 amendment attempted to clarify these murky waters. *Id.* at 650 (citing *Advisory Committee on Criminal Rules*, *Minutes* 3 (Apr. 25, 2013)).

[7] The Sixth Circuit is not alone. The Fifth, Seventh, and Eleventh Circuits all have taken the same view of the 2014 amendment to Fed. R. Crim. P. 12(e). *See, e.g., United States v. Vasquez*, 899 F.3d 363, 372 (5th Cir. 2018) ("Taken together, the amendment and [advisory committee's] note make clear that our prior approach" interpreting "waiver" in Fed. R. Crim. P. 12 "does not endure."); *United States v. Sperrazza*, 804 F.3d 1113, 1119 (11th Cir. 2015) ("Under the old version of the rule, Sperrazza waived his claim . . . because he did not raise it before trial," but the amended version of the rule "makes no mention of 'waiver'"; therefore, Sperrazza's claim is subject to plain error review.); *United States v. McMillian*, 786 F.3d 630, 636 & n.3 (7th Cir. 2015) (noting that "[t]he reference to 'waiver' was removed" from Fed. R. Crim. P. 12(e) "to clarify that the rule does not contemplate waiver as that term is traditionally used in criminal cases," but adding that there is "an antecedent good-cause requirement"). And the Fourth Circuit has cited *Soto* with approval in determining that "severance arguments [raised] for the first time on appeal" are reviewed "for plain error." *United States v. Harlan*, 714 F. App'x 220, 224 (4th Cir. 2017). *But see, e.g., Vance*, 893 F.3d at 769 n.5 (indicating that, even after the amendment to Fed. R. Crim. P. 12, the Tenth Circuit continues to deem "waived" any suppression issues raised for the first time on appeal).

14

¶26 The prosecution's reliance on *Stackhouse v. People*, 2015 CO 48, 386 P.3d 440, is equally unconvincing because *Stackhouse* is distinguishable. In *Stackhouse*, we followed precedent that has stood the test of time for almost half a century, *see Anderson v. People*, 490 P.2d 47, 48 (Colo. 1971), and concluded that defense counsel waived the right to object to a courtroom closure. *Stackhouse*, ¶¶ 9–17, 386 P.3d at 443–46. In both *Stackhouse* and *Anderson*, we were willing to infer a waiver because defense counsel in each case was clearly aware of the public closure and nevertheless chose not to raise an objection to it. *Stackhouse*, ¶ 17, 386 P.3d at 446; *Anderson*, 490 P.2d at 48. As the trial court closed the courtroom to the public during part of the proceedings, each defense attorney stood by, obviously aware of the court's decision, and elected to remain silent and forego raising an objection. *Stackhouse*, ¶ 2, 386 P.3d at 442; *Anderson*, 490 P.2d at 48. That is not the situation here. There is no indication in the record that it occurred to Phillips's counsel to raise the unpreserved claims but then, after considering doing so, decided against it.

¶27 There is a second basis for inferring a waiver when defense counsel fails to object to a courtroom closure that is not applicable in this case. As we recognized in *Stackhouse*, there are "sound strategic reasons to waive the right to a public trial, as [was] particularly apparent in the context of Stackhouse's jury selection for his trial on charges of sexual assault on a minor." *Stackhouse*, ¶ 15, 386 P.3d at 445. For instance, defense counsel may favor closure to avoid prejudicing the jury through pretrial publicity, may believe that potentially biased jurors are more likely to be candid if jury selection is closed to the public, or may be inspired to go along with a courtroom closure for fear that the victim's

family might intermingle with the venire and potentially turn prospective jurors against his client. *Id.*

¶28 In stark contrast, here, we are hard pressed to think of strategic reasons for failing to raise Phillips's unpreserved claims in the trial court. What benefit or advantage could Phillips's attorney have obtained from his failure to present *additional* grounds to contest the admissibility of the police-station statements and the gun? He clearly (and understandably) wanted both evidentiary items excluded from the trial. Inasmuch as he asked the trial court to suppress both articles of evidence, there is no basis to believe that he decided against raising the unpreserved arguments for strategic reasons.

¶29 The significant differences between courtroom-closure cases and this case do not end there. We expressed concern in *Stackhouse* that a finding of no waiver would encourage gamesmanship because a defense attorney could stand silent during a "known closure" and then "seek invalidation of an adverse verdict on that basis," thereby rendering any new trial a windfall for the defendant, a result the U.S. Supreme Court has "'explicitly tried to prevent.'" *Id.* at ¶ 16, 386 P.3d at 445–46 (quoting *State v. Pinno*, 850 N.W.2d 207, 225 (Wis. 2014)). Indeed, our trepidation that an attorney could intentionally forego objecting to a courtroom closure "as a strategic parachute to preserve an avenue of attack on appeal" motivated the holding in *Stackhouse*. *Id.*, 386 P.3d at 446. But we perceive no real danger of sandbagging here. By failing to raise a contention related to the suppression of evidence, a defendant runs the significant risk that the factual record will be insufficiently developed to establish plain error. Phillips acknowledges this concern. And our analysis of the claim related to the gun illustrates the point.

16

¶30    The prosecution also leans on *Hansen v. State Farm Mutual Automobile Insurance Co.*, 957 P.2d 1380 (Colo. 1998), and *Hinojos-Mendoza v. People*, 169 P.3d 662 (Colo. 2007). Neither case alters our conclusion. The former is inapposite; the latter was impliedly supplanted by *Rediger*.

¶31    In *Hansen*, a civil case, the trial court found that one party's proposed jury instruction did not represent an accurate statement of the law. 957 P.2d at 1385. Even when the trial court suggested that the party submit a revised instruction, counsel "deliberately chose not to redraft the instruction to comport with the law." *Id.* Under *Rediger*, these circumstances reflect an intentional relinquishment of the known right to submit an amended instruction consistent with the law. No such relinquishment took place here.

¶32    In *Hinojos-Mendoza*, we concluded that defense counsel waived his client's right to object to the prosecution's introduction of a laboratory report without calling as a witness the technician who prepared the report. 169 P.3d at 670. We noted that the statute that permits the prosecution to introduce a laboratory report without the technician's testimony affords the defense an opportunity to request such testimony "by notifying the witness and [the prosecution] at least ten days" before trial. *Id.* at 665 (quoting § 16-3-309(5), C.R.S. (2006)). In holding that Hinojos-Mendoza waived his right to confront at trial the technician who prepared the report, we pointed to his counsel's failure to make a timely request under the statute, inferring that such signified "a decision not to exercise the right at issue" because "we presume that attorneys know the applicable rules of procedure." *Id.* at 670.

17

¶33 But *Hinojos-Mendoza* runs headlong into *Rediger*. In *Rediger*, we disclaimed the type of waiver analysis we undertook in *Hinojos-Mendoza* eleven years earlier, *see Rediger,* ¶¶ 41–44, 416 P.3d at 902–03. As we made clear in *Rediger*, without any evidence that defense counsel intended to relinquish the right in question, we cannot infer that a waiver of that right occurred. *See id.* at ¶ 44, 416 P.3d at 903.

¶34 Nevertheless, in the companion case we decide today, the People insist that when a statute or rule includes procedural requirements, defense counsel's failure to comply with them must be deemed a waiver. *See Cardman v. People*, 2019 CO 73, ¶¶ 13–16, __ P.3d __. We are unpersuaded. The People's position is not supported by *Rediger* and would lead to absurd results.

¶35 The waiver/forfeiture distinction we drew in *Rediger* did not turn on whether defense counsel was required to raise an objection to the incorrect instruction by a procedural rule or by substantive law. Nowhere in *Rediger* did we discuss the difference between procedural and substantive legal requirements. Under the People's assertion, the outcome in *Rediger* would have been different if a statute or rule had established procedures for objecting to inaccurate instructions. Because nothing in our *Rediger* rationale comports with that approach, we reject it.

¶36 Moreover, distinguishing between procedural rules and substantive law to determine whether a claim is waived or forfeited makes little sense. For example, as relevant here, Rules 41(e) and (g) set forth the procedures for raising suppression issues in the trial court. But no one would dispute that, since a criminal defense attorney has an ethical obligation to zealously represent his client, he is required to raise suppression

18

issues before trial when doing so is warranted by Fourth and Fifth Amendment jurisprudence. In other words, if Rules 41(e) and (g) didn't exist, defense counsel would still have a duty to advance appropriate Fourth and Fifth Amendment arguments to attempt to exclude certain evidence from trial. Yet, the People would have us hold that a defense attorney's failure to comply with a procedural rule always amounts to a waiver, but a defense attorney's failure to comply with substantive law can be a forfeiture when such failure is not an intentional relinquishment of a known right. The People forget that attorneys are also presumed to know substantive law. We see no basis to create an exception to *Rediger* based on Rule 41(e) or (g).

¶37 This is not to say that there aren't compelling reasons for the procedures outlined in Rules 41(e) and (g). Nor should we be understood as minimizing the importance of compliance with those rules. But the question we confront today is neither whether the rules should be in place nor whether requiring that suppression contentions be timely raised before trial is truly necessary. The issue we address is whether an appellate court should be allowed to review for plain error when defense counsel negligently fails to raise a suppression assertion at the trial court. Consistent with *Rediger*, we answer yes.

¶38 In sum, we conclude that the mere failure by Phillips's counsel to include the unpreserved assertions in the motions to suppress he filed does not by itself constitute a waiver. Instead, we hold that Phillips forfeited his unpreserved claims. Therefore, we next review each claim for plain error.

## C. The Trial Court Did Not Err, Much Less Plainly Err, in Admitting the Police-Station Statements

¶39     Under Crim. P. 52(b), plain error occurs when there is (1) an error, (2) that is obvious, and (3) that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120. We conclude that the trial court did not err in admitting the police-station statements, even though they were made after the unconstitutionally obtained statements in the police car. Therefore, we hold that the admission of the police-station statements did not constitute plain error.

¶40     For purposes of our analysis, we assume without deciding that Phillips was in custody when he was questioned by Detective Fish in the police car, that the detective was required to read him his *Miranda* rights before questioning him there, and that the trial court correctly suppressed the police-car statements. With these assumptions in mind, we consider Phillips's unpreserved argument that the police-station statements should have been excluded because the detective conducted an unconstitutional "two-step interrogation."

¶41     A "two-step interrogation" takes place when officers elicit incriminating statements from an in-custody suspect without giving him his *Miranda* rights and then interview him again later and obtain a confession after giving him his *Miranda* rights and securing a waiver of those rights. *Verigan v. People*, 2018 CO 53, ¶ 20, 420 P.3d 247, 251. The trial court must initially assess whether the police "deliberately use[d] a two-step interrogation procedure to obtain a confession" with the goal of undermining the

20

meaning and effect of the *Miranda* advisement. *Id.* at ¶ 34, 420 P.3d at 254 (adopting *Seibert*, 542 U.S. at 618–22 (Kennedy, J., concurring in the judgment)).[8] If the court concludes that "the police did not deliberately use a two-step technique to undermine *Miranda*, then it should apply" the test articulated in *Oregon v. Elstad*, *id.*, which focuses on whether the post-warning statements were "knowingly and voluntarily made," *Elstad*, 470 U.S. at 309. On the other hand, if the court finds that officers deliberately engaged in a two-step procedure, it should then "determine whether curative measures . . . were employed, such that the suspect would understand the import and effect of the warning at the time of the later statement." *Verigan*, ¶ 34, 420 P.3d at 254. Only if sufficient curative measures were used should the court deny a request to suppress the post-*Miranda* statements. *Id.*

¶42 Looking at the totality of the circumstances, including objective and subjective evidence, we conclude that the prosecution established that Detective Fish did not "deliberately engage[] in a two-step interrogation procedure with the intent to undermine the *Miranda* warnings." *See id.* at ¶ 42, 420 P.3d at 255–56. While in the police car, Detective Fish did not conduct a systematic and exhaustive interrogation that was managed with psychological skill, as the officers did in *Seibert*. *Cf. Seibert*, 542 U.S. at 616. Nor was the subsequent interrogation treated as a continuation of the first. *Cf. id.* Finally,

---

[8] The *Seibert* court was fractured with no clear majority. We have adopted the analysis set forth in Justice Kennedy's concurrence as *Seibert*'s governing rule. *See Verigan*, ¶¶ 31–38, 420 P.3d at 253–55.

Phillips did not make any incriminating statements during the initial interrogation; it was only during the police-station interrogation that he reported that the gun belonged to his cousin. *Cf. id.*

¶43 But Phillips goes on to argue that, even if Detective Fish did not engage in a two-step interrogation, the police-station statements still should have been excluded pursuant to *Elstad*. We disagree.

¶44 Under *Elstad*, a post-warning statement is admissible if: (1) the pre-warning statement was the product of uncoercive questioning; (2) thereafter, the defendant was given his *Miranda* rights and voluntarily waived those rights prior to the post-warning statement; and (3) the post-warning statement was knowingly and voluntarily made. *Verigan*, ¶ 45, 420 P.3d at 256. Here, there is no evidence that Phillips's pre-warning statements in the police car were coerced. The circumstances on which Phillips relies—that he was patted down, that he was placed in the back of a police car and was not free to leave, that he was not read his *Miranda* rights or given an opportunity to consult with counsel before questioning, and that he was asked about his suspended license, his criminal convictions, and his possible involvement with guns and drugs—do not establish that the detective's conduct overcame Phillips's will to resist and brought about an involuntary confession. *See People v. Klinck*, 259 P.3d 489, 495 (Colo. 2011). Indeed, Phillips did not confess during the police-car interrogation, and so his will was not overborne by the detective's actions.

¶45 Further, the detective testified that he read Phillips his *Miranda* rights at the police station before the second interrogation and that Phillips validly waived those rights. No

22

evidence was presented to contradict that testimony, and the trial court found the detective credible and reliable. Lastly, Phillips does not argue that his police-station statements were unknowing or involuntary despite the *Miranda* warnings. Accordingly, we conclude that, pursuant to *Elstad*, the trial court did not err, let alone plainly so, in admitting Phillips's police-station statements.

¶46 Because Detective Fish did not engage in a deliberate two-step interrogation designed to undermine *Miranda*, and because the admission of Phillips's police-station statements did not run afoul of *Elstad*, we conclude that the trial court did not err in admitting those statements. Therefore, we hold that the admission of the police-station statements did not constitute plain error.

## D. The Record Does Not Establish that the Admission of the Gun Was Plain Error

¶47 Phillips contends for the first time on appeal that his consent to search the car was tainted and rendered involuntary because it was provided during a custodial interrogation conducted in violation of *Miranda*. Even assuming that the police-car interrogation was a custodial one requiring a *Miranda* advisement, the record is insufficiently developed to establish plain error.

¶48 "Whether a consent to search is sufficiently an act of free will to purge the taint of an illegal custodial interrogation depends upon the totality of the circumstances surrounding the consent." *People v. Breidenbach*, 875 P.2d 879, 890 (Colo. 1994). To make this determination, the court must consider "factors such as the defendant's age, education, intelligence and state of mind, . . . the duration, location, and other

23

circumstances of the search[,] . . . the temporal proximity between the interrogation and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct." *Id.* (internal citations omitted).[9]

¶49    A search of the record for evidence of some of the relevant factors comes up empty; a search of the record related to other factors reveals that the evidence is in conflict. As a result, there are factual disputes between the parties that remain unresolved. For example, the adult passenger testified that the interrogation lasted approximately half an hour. But the officer who searched Phillips's car implied that it took about five minutes. Similarly, Phillips maintains that his encounter with Detective Fish was confrontational, but the prosecution claims it wasn't. And the parties disagree regarding the presence of intervening factors that may have broken the causal connection between the consent to search and the police-car interrogation.

¶50    In short, our inspection of the record leads us to conclude that it does not establish plain error. There is no basis for us to determine that the trial court plainly erred in admitting the gun because the scant record does not establish that Phillips's consent to search was tainted by the police-car interrogation.[10]

---

[9] The prosecution argues that *Briedenbach* is inconsistent with *Elstad* and that, under *Elstad*, any *Miranda* violation did not taint the subsequent search of the car because, as the trial court found, the consent was voluntarily provided. We need not, and therefore do not, reach this question.

[10] We do not believe that remanding for further development of the record and further findings is appropriate in this situation. Doing so would improperly place Phillips in the same position as if he had timely raised the unpreserved claim, would strip the

24

## III. Conclusion

¶51    Phillips failed to preserve the two claims of error raised on appeal.  But we hold that the claims were forfeited, not waived, and are thus subject to plain error review. Undertaking such review, we conclude that the trial court did not err in admitting Phillips's police-station statements and that the record does not establish that the admission of the gun was plain error.  Accordingly, we affirm the division's judgment, albeit on other grounds.

**JUSTICE HOOD** concurs in the judgment only, and **CHIEF JUSTICE COATS** and **JUSTICE MÁRQUEZ** join in the concurrence in the judgment only.

---

preservation requirement of any meaning, and would dilute the rigorous plain error standard of review governing forfeited issues.

JUSTICE HOOD, concurring in the judgment only.

¶52    Because I agree that reversal is unwarranted, but disagree as to the rationale, I respectfully concur in the judgment only.  For the reasons I stated in my dissent in *People v. Cardman*, 2019 CO 73, __ P.3d __, the majority's reasoning here is flawed.  In reaching its conclusion, the majority overextends *People v. Rediger*, 2018 CO 32, 416 P.3d 893, and suggests it "supplant[s]" our holding in *Hinojos-Mendoza v. People*, 169 P.3d 662 (Colo. 2007). Maj. op. at ¶ 30.  But *Rediger* is inapposite—there was no rule in *Rediger* mandating that a defendant file a motion to suppress evidence or an involuntary statement *before* trial.   Here, we have such a rule, and thus, *Hinojos-Mendoza* controls: Phillips's unpreserved arguments for suppression were waived.

¶53    Colorado's Rules of Criminal Procedure allow defendants, who believe they were subjected to an "unlawful search and seizure" to file a motion to suppress evidence obtained as a result of that unlawful search.  Crim. P. 41(e).  But the rule mandates that the motion be brought pretrial.  Crim. P. 41(e) ("The motion *shall* be made and heard *before* trial . . . .") (emphases added); *see also* Crim. P. 41(g) (same).   If the "opportunity therefor did not exist or the defendant was not aware of the grounds for the motion" then the defendant may file an untimely motion.  Crim. P. 41(e), (g).  However, the trial court has discretion over whether to entertain the untimely motion.  Crim. P. 41(e), (g).

¶54    Phillips doesn't contend that he lacked the opportunity to file a motion to suppress, or that he wasn't aware of the grounds for filing a suppression motion.

¶55    On the contrary, Phillips filed two motions to suppress—one challenging the use of evidence obtained as a result of a traffic stop, the other challenging admission of the

1

statements he made at the police station. Phillips primarily based his suppression motions on two arguments: (1) the evidence obtained from the traffic stop should be suppressed because there was insufficient proof that he consented to the search of his car, maj. op. at ¶ 14; and (2) his statements at the police station should be suppressed because there was insufficient evidence that he received and waived his *Miranda* rights, *id.* at ¶ 13. After holding a hearing on these motions to suppress, the trial court ultimately denied both motions.

¶56 Yet on appeal, Phillips advanced two different theories as to why the suppression motions should have been granted. Regarding the evidence seized as a result of the search of his car, Phillips contended that his consent was tainted by the unconstitutional interrogation that took place at the scene of the traffic stop. *See id.* at ¶ 8. He similarly argued that his statements at the police station were also tainted by the earlier unconstitutional interrogation. *See id.* The majority rightly concludes that both arguments weren't properly preserved. *See id.* at ¶ 11.

¶57 But the majority errs in concluding that we can review these new arguments for plain error. The plain language of Crim. P. 41 and our precedent in *Hinojos-Mendoza* foreclose that option. Moreover, appellate courts don't have the expertise, functionality, or capacity to undertake review of an undeveloped record. *See People v. McIntyre*, 789 P.2d 1108, 1110 (Colo. 1990) (discussing how the trial court "must make sufficiently clear and detailed findings of fact and conclusions of law *on the record* to permit meaningful appellate review"); *People v. Jansen*, 713 P.2d 907, 912 n.8 (Colo. 1986) (stating that motions to suppress must be sufficiently specific so "the prosecution [is] on notice of the

2

contentions it must be prepared to meet at a suppression hearing and to inform the court of the issues to be decided").

¶58    Defendants, however, still have a remedy.  As I noted in my dissent in *Cardman*, a defendant can challenge his counsel's failure to raise a valid argument for suppression in a postconviction proceeding by alleging ineffective assistance of counsel.  Rule 35(c) allows for development of the relevant factual record.  *See Moore v. People*, 2014 CO 8, ¶ 26, 318 P.3d 511, 517.  Doing so would allow trial courts to assess *why* counsel didn't raise certain arguments for suppression and whether counsel's actions constituted ineffective assistance of counsel.

¶59    For all these reasons, I respectfully concur in the judgment only.

I am authorized to state that CHIEF JUSTICE COATS and JUSTICE MÁRQUEZ join this concurrence in the judgment only.