23CA1937 Peo v Valles-Dominguez 12-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1937
Arapahoe County District Court No. 21CR2121
Honorable Michelle Jones, Judge
Honorable LaQunya Baker, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Rigoberto Valles-Dominguez,

Defendant-Appellant.

JUDGMENT AFFIRMED, ORDER VACATED, AND
CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE GOMEZ
Welling, J., concurs
Sullivan, J., concurs in part and dissents in part

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Kimberly Alderman Rufe, Alternate Defense Counsel, Chelsey Bradley, Alternate Defense Counsel, Fort Collins, Colorado, for Defendant-Appellant

¶ 1    After a shootout with two police officers and a carjacking, defendant, Rigoberto Valles-Dominguez, was charged with and convicted of attempted first degree murder, aggravated robbery, and other offenses.  In addition to being sentenced to a total of 128 years in the Department of Corrections, he was ordered to pay nearly $350,000 in restitution.  Valles-Dominguez now appeals the judgment of conviction and the restitution order.  He contends that there is insufficient evidence to support his conviction on the attempted murder and aggravated robbery charges.  He also contends that the restitution order must be vacated because it was entered after the statutory deadline.  We disagree with his first contention but agree with the second.  Accordingly, we affirm the judgment of conviction but vacate the restitution order and remand the case to the trial court to amend the mittimus to reflect that no restitution is owed.

## I.    Background

¶ 2    One night, Valles-Dominguez and his then-girlfriend, B.A., visited a laundromat and a 7-Eleven.  The two then drove back toward B.A.'s Littleton apartment in her car, a gold Chevrolet Impala.  On the way, they parked on a street near her apartment,

1

where they talked about their relationship. At one point, Valles-Dominguez, who was sitting in the front passenger seat, got upset, pulled out a gun, and fired a few times out the passenger window.

¶ 3    After receiving a report of gunshots, Corporal Jeff Farmer, Officer David Snook, and another officer from the Littleton Police Department responded to the area. While they were on their way, they received a second report that someone had witnessed a person in a car matching the description and license plate number of B.A.'s car reach out the window and shoot a gun.

¶ 4    Corporal Farmer arrived at B.A.'s apartment building and pulled up next to Valles-Dominguez and B.A., who had by then parked at the apartment, gotten out, and started walking. Corporal Farmer asked the two if they had heard any gunshots. Valles-Dominguez responded that they had heard shots about twenty minutes earlier. This was suspicious to Corporal Farmer, as he had received the report of gunshots only two to three minutes earlier.

¶ 5    Then, Officer Snook, who had arrived in a separate patrol car, quickly walked toward them, saying that Valles-Dominguez was the suspect and was under arrest. Valles-Dominguez took off running toward the back door of the apartment building. The two officers

2

followed on foot. As Valles-Dominguez ran, he pulled out a gun. Officer Snook followed him inside the building. Valles-Dominguez ran up a stairwell and fired repeatedly at Officer Snook, who was hit seven times. Corporal Farmer went inside to rescue Officer Snook, and Valles-Dominguez started firing at Corporal Farmer, too, but didn't hit him. Eventually, Corporal Farmer and the other officers who had arrived on the scene were able to get Officer Snook to a patrol car and take him to the hospital. He survived. Valles-Dominguez evaded capture that night.

¶ 6    In the early hours of the next morning, Valles-Dominguez ran up to a man, I.A., as he was getting into his car in a parking lot near B.A.'s apartment. Valles-Dominguez pointed a gun at him and demanded to be driven somewhere. I.A. refused. Valles-Dominguez then shot into the driver's side window, hitting the seat next to I.A., and got in the back seat of the car. I.A. got out and ran off. Valles-Dominguez drove away in the car.

¶ 7    The next day, Valles-Dominguez contacted B.A. and asked her to meet him at a location across town. When she arrived, he asked her to buy him a new cell phone and a change of clothes, which she

did at a nearby Walmart. I.A.'s car was later recovered near the location where Valles-Dominguez and B.A. had met up.

¶ 8 Investigators eventually found Valles-Dominguez hiding in a house in Brighton. He was arrested at the house following a seven-hour standoff. A dismantled gun was recovered from under the floorboards in the attic of the house.

¶ 9 Valles-Dominguez was charged with, and ultimately convicted of, multiple offenses.

¶ 10 After merging some of the offenses, the trial court entered judgment on two counts each of attempted first degree murder and first degree assault (as to Corporal Farmer and Officer Snook); one count each of aggravated robbery (as to I.A.) and prohibited use of a weapon; and multiple crime of violence sentence enhancers.

## II. Sufficiency of the Evidence

¶ 11 Valles-Dominguez challenges the sufficiency of the evidence supporting the attempted murder and aggravated robbery convictions. We reject both challenges.

### A. Applicable Law and Standard of Review

¶ 12 We review claims challenging the sufficiency of the evidence de novo, determining whether the evidence presented was sufficient

4

in both quantity and quality to support the defendant's conviction. *McCoy v. People*, 2019 CO 44, ¶ 63.

¶ 13    In doing so, we assess whether the evidence, viewed in the light most favorable to the prosecution, supports a reasonable conclusion that the defendant is guilty beyond a reasonable doubt. *People v. Tomaske*, 2022 COA 52, ¶ 17.  However, we may not "serve as a thirteenth juror and consider whether [we] might have reached a different conclusion than the jury." *People v. Harrison*, 2020 CO 57, ¶ 33.  Thus, we will disturb the verdict only if, despite drawing every reasonable inference in favor of the prosecution, the record is unsubstantial and insufficient to support a guilty verdict beyond a reasonable doubt.  *Thomas v. People*, 2021 CO 84, ¶ 10; *Clark v. People*, 232 P.3d 1287, 1291-92 (Colo. 2010).

## B.    Attempted Murder

¶ 14    As to the attempted murder charges, Valles-Dominguez asserts that there was insufficient evidence that he was the person who shot at the two officers.  We disagree.[1]

---

[1] Although it appears that Valles-Dominguez challenges only the attempted murder conviction concerning Officer Snook, and not the conviction concerning Corporal Farmer, the same evidence supports both convictions.  Accordingly, we address them both here.

¶ 15    The People presented ample evidence at trial pointing to Valles-Dominguez as the shooter.

¶ 16    First, B.A. testified that Valles-Dominguez said things to her after the shooting that came close to confessions, such as that "he didn't mean to," and "[h]e was just trying to get away." She further testified that on the night in question, she was with Valles-Dominguez at a laundromat and a 7-Eleven and then on a street near her apartment building, where he shot a gun out of her car window. She also testified that police officers stopped her and Valles-Dominguez as they were walking back to her apartment building, Valles-Dominguez ran off toward the building, the officers ran after him, and she heard gunfire after they went inside. Surveillance video from the laundromat and the 7-Eleven, as well as shell casings found in the area where B.A. said Valles-Dominguez shot outside the car, corroborated B.A.'s description of the events of that night. The video also showed B.A. and Valles-Dominguez in the gold Impala that officers were looking for in connection with the initial shooting and that they later found B.A. and Valles-Dominguez walking away from outside the apartment building.

¶ 17    Also, although by the time of trial Officer Snook couldn't identify Valles-Dominguez or remember having identified him as the shooter, another witness testified that shortly after the shooting, Officer Snook identified Valles-Dominguez in a photo array. And Corporal Farmer testified that he was shown a screen shot from the 7-Eleven surveillance video and identified the man in it as the person who had shot at him. He also identified Valles-Dominguez at trial as the shooter.

¶ 18    Additionally, ballistics evidence tied the bullets and shell casings collected from the location of the shooting, as well as other shell casings associated with the shooting outside of B.A.'s car, to the gun police recovered from the house where Valles-Dominguez was arrested. And Valles-Dominguez's DNA was found on the gun.

¶ 19    Finally, there was evidence presented at trial that Valles-Dominguez acted in ways indicating consciousness of guilt following the shooting. B.A. testified that Valles-Dominguez asked her to get him a new phone and a change of clothes, which was corroborated by surveillance video showing her buying those things at Walmart. Further, Valles-Dominguez engaged in a seven-hour standoff with officers at the house in Brighton before surrendering.

¶ 20     Valles-Dominguez contends that this evidence is insufficient, identifying some weaknesses in the evidence.  For instance, he points out that Officer Snook wasn't able to identify him at trial, that Corporal Farmer was shown only a photo of him (not a full array including other individuals) and admitted to not having gotten a clear view of the shooter, and that DNA from three other persons (two of whom were never identified) was also found on the gun.

¶ 21     But it was up to the jury to weigh these issues and determine Valles-Dominguez's guilt.  *See Harrison*, ¶ 33.  And even if we were to disregard the evidence Valles-Dominguez takes issue with, there was still ample evidence that he was the shooter.  Giving the People the benefit of every reasonable inference that may be drawn from the evidence, the evidence supports a fair-minded jury's finding that Valles-Dominguez was the person who shot at the officers.  *See Thomas*, ¶ 10; *Clark*, 232 P.3d at 1291-92.

## C.    Aggravated Robbery

¶ 22     Similarly, as to the aggravated robbery charge, Valles-Dominguez asserts that there was insufficient evidence that he was the person who carjacked I.A.  Again, we disagree.

¶ 23    The People presented evidence that, although I.A. and Valles-Dominguez didn't know each other, Valles-Dominguez's DNA was found on the steering wheel of I.A.'s car.  Additionally, I.A.'s car was recovered near the location where Valles-Dominguez met with B.A. the day after the carjacking.  Further, a ballistics expert determined that the bullet fired into the car came from the same gun that was used in the earlier shooting and was recovered in the house where Valles-Dominguez had been hiding.  And I.A. identified Valles-Dominguez as the carjacker from a photograph.

¶ 24    Valles-Dominguez again points to weaknesses in the evidence, such as I.A.'s inability to identify Valles-Dominguez in a photo array or in court, I.A.'s identification of him in only one of the two photos of him shown by investigators, the possibility that his DNA in I.A.'s car could have come from secondary transfer, and the absence of any evidence of his fingerprints in I.A.'s car.  But again, giving the People the benefit of every reasonable inference, we conclude that the evidence was sufficient to support the jury's finding that Valles-Dominguez was the person who committed the carjacking.  *See Thomas,* ¶ 10; *Clark,* 232 P.3d at 1291-92.

## III. Restitution

¶ 25 Finally, Valles-Dominguez contends that the trial court erred by imposing restitution after expiration of the ninety-one-day deadline in section 18-1.3-603(1)(b), C.R.S. 2023. We agree.

### A. Additional Facts

¶ 26 At Valles-Dominguez's sentencing hearing on September 25, 2023, the prosecution made an initial request for about $2,000 in restitution, payable to the Victim Compensation Fund in relation to Corporal Farmer. The prosecution also requested forty-five days to supplement its motion with additional amounts relating to Officer Snook. Valles-Dominguez, in turn, asked for fourteen days after the prosecution's filing to lodge an objection to both the amount initially requested and any additional amounts. The court agreed to reserve ruling on the amount of restitution and entered a minute order establishing the deadlines for the amended motion and any objections to it.

¶ 27 The prosecution filed a timely amended motion requesting a total of about $355,000 in restitution. That same day, the court held a status conference at which the parties discussed scheduling a restitution hearing. Aware of the ninety-one-day statutory

deadline for determining the final amount of restitution, which was December 25, the court set the hearing for December 13. However, for reasons unstated in the record, that hearing was vacated and rescheduled outside the deadline. After the restitution hearing, which was ultimately held on February 2, 2024, the court entered an order awarding $349,998.68 in restitution. There was no discussion at that hearing of the deadline for ordering restitution having passed.

## B. Waiver

¶ 28    As a preliminary matter, the People assert that Valles-Dominguez waived this issue because he didn't object to the restitution hearing being set outside the statutory ninety-one-day deadline.

¶ 29    We review de novo whether a claim is waived. *Babcock v. People*, 2025 CO 26, ¶ 28. In doing so, we "indulge every reasonable presumption against waiver," as we don't presume acquiescence in the loss of a defendant's rights. *People v. Garcia*, 2024 CO 41M, ¶ 29 (quoting *People v. Rediger*, 2018 CO 32, ¶ 39).

¶ 30    Waiver of a statutory right, as is argued here, "must be voluntary, but need not be knowing and intelligent." *People v.*

11

*Roberson*, 2025 CO 30, ¶ 13 (quoting *Finney v. People*, 2014 CO 38, ¶ 16).  Waiver may be explicit, such as "when a party expressly abandons an existing right or privilege," or implied, such as "when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion."  *Forgette v. People*, 2023 CO 4, ¶ 28.  Waiver extinguishes error and therefore any appellate review.  *Rediger*, ¶ 40.

¶ 31    Although it doesn't appear that Valles-Dominguez objected to the restitution hearing being held after the ninety-one-day deadline, his failure to object, standing alone, doesn't constitute waiver.  *See Phillips v. People*, 2019 CO 72, ¶ 21 ("the mere failure to raise an issue" isn't sufficient to establish an unequivocal act indicative of waiver or a clear manifestation of an intent to relinquish a claim, both of which are necessary to establish waiver).  And there is no indication in the record that Valles-Dominguez consented to — much less requested — a hearing date beyond the ninety-one day deadline.  *Cf. Babcock*, ¶ 30 (the defendant waived his right to have the court determine the amount of restitution within ninety-one days where he requested a hearing date that fell after expiration of the deadline); *Roberson*, ¶ 17 (the defendant waived her right to

12

have the court determine the amount of restitution within ninety-one days where she didn't object to the trial court's suggestion to hold a hearing after expiration of the deadline and then requested four additional continuances of that hearing).

¶ 32    Accordingly, we conclude that while Valles-Dominguez's actions equate to forfeiture, they don't amount to waiver. *See Rediger*, ¶¶ 39-40 (distinguishing the two doctrines).

¶ 33    While waiver extinguishes error, and thus appellate review, forfeiture does not. *Id.* at ¶ 40. And while we ordinarily review forfeited claims for plain error, claims that could be brought as illegal manner claims under Crim. P. 35(a) don't need to be preserved and may be raised for the first time on direct appeal. *Fransua v. People*, 2019 CO 96, ¶ 13. A claim that the defendant was ordered to pay restitution in violation of the deadlines and procedures set forth in section 18-1.3-603 may be raised under Rule 35(a). *See People v. Tennyson*, 2023 COA 2, ¶ 33, *aff'd*, 2025 CO 31. Thus, despite the lack of preservation, we review this issue de novo. *See People v. Weeks*, 2021 CO 75, ¶ 24; *People v. Martinez Rubier*, 2024 COA 67, ¶¶ 23, 25.

### C.    Timeliness of the Restitution Order

¶ 34    At the time of Valles-Dominguez's sentencing, section 18-1.3-603(1)(b) required that when a trial court ordered restitution at sentencing but left the amount open, the court had to resolve the amount within ninety-one days, absent an extension of that deadline for good cause.  A trial court "lack[s] authority" to order restitution when it neither determines the restitution amount within ninety-one days nor expressly finds good cause to extend the deadline before the deadline has expired.  *Weeks*, ¶¶ 5, 45.

¶ 35    The trial court here did not determine the restitution amount within the ninety-one-day deadline, and there is no indication in the record that the court found good cause to extend the deadline.  Therefore, the court lacked authority to order restitution.

¶ 36    While Valles-Dominguez asks us to vacate the restitution order based on the violation of the statutory deadline, the People dispute whether vacatur is the proper remedy.  But in a recent opinion, our supreme court reaffirmed that the appropriate remedy for entry of an untimely restitution order is to vacate the order.  *See Snow v. People*, 2025 CO 32, ¶¶ 4, 30-40; *accord Weeks*, ¶ 47.

14

¶ 37 Accordingly, we vacate the restitution order and remand the case to the trial court to amend the mittimus to reflect that no restitution is owed.

## IV. Disposition

¶ 38 The judgment is affirmed, the restitution order is vacated, and the case is remanded for amendment of the mittimus to reflect that no restitution is owed.

JUDGE WELLING concurs.

JUDGE SULLIVAN concurs in part and dissents in part.

JUDGE SULLIVAN, concurring in part and dissenting in part.

¶ 39    I agree with the majority's well-reasoned decision that sufficient evidence supported Valles-Dominguez's convictions for attempted murder and aggravated robbery. As a result, I agree that the convictions should be affirmed. I part ways, however, from the majority's conclusion that Valles-Dominguez didn't waive his argument based on the statutory deadline for imposing restitution. In my view, the majority's waiver analysis (1) doesn't align with the record or the supreme court's precedent and (2) will incentivize gamesmanship in restitution proceedings. I therefore respectfully dissent from the majority's decision to vacate the trial court's restitution order.

¶ 40    First, the majority rejects the People's argument that Valles-Dominguez waived the ninety-one-day deadline in section 18-1.3-603(1)(b), C.R.S. 2023.[2] But in my view, that conclusion doesn't line up with either the record or the supreme court's recent

---

[2] In 2025, the General Assembly amended the deadline to sixty-three days following the later of (1) the prosecution's presentation of restitution information or (2) the order of conviction. Ch. 307, sec. 1, § 18-1.3-603(1)(b), 2025 Colo. Sess. Laws 1606. Like the majority, I cite to the 2023 version of section 18-1.3-603 that was in effect at the time the trial court ordered restitution.

decisions on waiver. At the November status conference to set the restitution hearing, defense counsel said she "defer[red] to the [p]rosecution" and to "when the other parties are available" because she anticipated waiving Valles-Dominguez's appearance. The prosecutor then raised the ninety-one-day deadline; said it expired on December 25, 2023; and twice requested the court set the restitution hearing "within that time period . . . to make sure the [c]ourt is preserving" its ability to order restitution. Although the court initially set the restitution hearing within the statutory period, it later postponed the hearing for unexplained reasons to February 2, 2024, a date beyond the ninety-one-day deadline.

¶ 41  Despite being made aware of the ninety-one-day deadline at the status conference, defense counsel never filed an objection to the court postponing the restitution hearing beyond the deadline. Nor did the defense attorney who represented Valles-Dominguez at the restitution hearing — the same attorney who was present at the status conference and heard the prosecutor repeatedly mention the ninety-one-day deadline — verbally object at the February hearing to the court imposing restitution beyond the deadline. *See Finney*

*v. People*, 2014 CO 38, ¶ 16 ("Counsel may waive a defendant's statutory rights.").

¶ 42     Our supreme court has recently made clear that a defendant impliedly waives their objection, and thus extinguishes appellate review, when they are fully aware of an alleged error but decline to request corrective action.  *See Forgette v. People*, 2023 CO 4, ¶¶ 30, 34.  In *Forgette,* the prosecutor alerted the court and defense counsel that one of the jurors appeared to be asleep.  *Id.* at ¶ 25.  Although defense counsel suggested that the trial court try to "rouse" the juror, which the court attempted, defense counsel sought no further relief from the court.  *Id.* at ¶ 26.  Because defense counsel was "fully aware" of the sleeping juror but didn't object or ask the court to take further corrective action, the supreme court concluded that the defendant had waived his right to object on appeal.  *Id.* at ¶ 34.

¶ 43     Thus, under *Forgette,* a defendant's inaction, when coupled with their full awareness of a potential error, amounts to an implied waiver of the error.  *Accord Stackhouse v. People*, 2015 CO 48, ¶¶ 10-16 (concluding defendant waived his right to argue that he

was denied a public trial when defense counsel was aware of the courtroom closure but failed to object).

¶ 44　Admittedly, some tension exists between *Forgette* and the earlier supreme court cases cited by the majority that say a defendant's failure to raise an issue, without more, isn't enough to constitute a waiver. *See Phillips v. People*, 2019 CO 72, ¶ 21; *People v. Rediger*, 2018 CO 32, ¶¶ 42, 46. But those cases are distinguishable. Unlike *Forgette*, the supreme court perceived no evidence that the defendants in those cases were fully aware of the unobjected-to errors. *See Phillips*, ¶ 26; *Rediger*, ¶ 43.

¶ 45　Given these recent developments in the supreme court's case law, whether a defendant is fully aware of the unobjected-to error becomes critical to the waiver analysis. This begs the question: How does an appellate court suss out whether the defendant was fully aware of the error or whether they simply overlooked it through mere inadvertence? The supreme court has recently provided guidance on that question, too.

¶ 46　In *People v. Roberson*, 2025 CO 30, ¶ 4, the trial court at sentencing ordered the defendant to pay restitution but reserved the amount. In doing so, the trial court mentioned section 18-1.3-

19

603(1)(b)'s ninety-one-day deadline. *Id.* The trial court later proposed a restitution hearing date that fell outside the ninety-one-day window, which date defense counsel accepted. *Id.* at ¶ 1. On appeal, the supreme court held that the defendant had waived her objection to the timeliness of the court's restitution order. *Id.* at ¶ 17. Applying *Forgette*, the supreme court explained that the defendant's failure to object to the court's proposed hearing date, "when it fell outside of the ninety-one-day deadline and *when the statutory deadline had been expressly mentioned at the sentencing hearing*, constituted a voluntary waiver of a statutory right."[3] *Id.* (emphasis added).

¶ 47    Accordingly, based on *Roberson* and *Forgette*, a defendant is deemed fully aware of — and impliedly waives their right to object to any noncompliance with — the statutory deadline for imposing restitution when their defense counsel is informed at sentencing of

---

[3] The majority points out that the defendant in *Roberson* did more than merely accept the court's proposed restitution hearing date; she also requested four continuances of the hearing after the ninety-one-day deadline had already passed. *People v. Roberson*, 2025 CO 30, ¶ 16. But again, *Forgette* makes clear that such affirmative acts aren't essential to show an implied waiver; defense counsel's inaction when they are fully aware of the error is enough. *See Forgette v. People*, 2023 CO 4, ¶¶ 26, 34.

the deadline but nonetheless accepts a restitution hearing date beyond the deadline. *Cf. People v. Franco*, 74 P.3d 357, 359 (Colo. App. 2002) ("[A] defendant cannot stand mute and allow a trial schedule to be adopted without registering his complaint that such schedule violates his speedy trial rights." (citation omitted)). Because those are the exact facts of this case, I would hold that Valles-Dominguez impliedly waived his right to object to the timeliness of the trial court's restitution order.

¶ 48   Second, I worry that the version of the waiver rule applied by the majority will encourage sandbagging and gamesmanship. As the majority notes, a trial court's error in entering an untimely restitution order requires that we automatically vacate the order, even when the defendant failed to object below to the delay. *See Snow v. People*, 2025 CO 32, ¶¶ 4, 30-40. Unlike most unpreserved errors, no plain error analysis applies.

¶ 49   Given this strict rule, I have difficulty imagining a scenario in which a defendant will *ever* object to the trial court scheduling a restitution hearing beyond section 18-1.3-603(1)(b)'s deadline. They will instead await the outcome of the (untimely) restitution hearing and, if adverse, seek automatic vacatur on appeal. In my

view, a defendant who chooses to refrain from objecting to an untimely restitution hearing, despite being fully aware of the applicable deadline, shouldn't receive such a windfall. *See, e.g.*, *Stackhouse*, ¶ 16 ("Allowing a defense attorney who stands silent during a known [courtroom] closure to then seek invalidation of an adverse verdict on that basis would encourage gamesmanship"); *cf. Phillips*, ¶ 29 (finding no waiver, in part, because "no real danger of sandbagging" exists when the defendant must show plain error through a sufficiently developed factual record).

¶ 50 For these reasons, although I agree with the majority that Valles-Dominguez's convictions should be affirmed, I respectfully dissent from its decision to vacate the trial court's restitution order.